UNITED STATES, Appellee

v.

Stanley O. OTHURU, Storekeeper Second Class
U.S. Navy, Appellant

No. 06-0768

Crim. App. No. 200301631

United States Court of Appeals for the Armed Forces

Argued October 16, 2007

Decided December 12, 2007

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, STUCKY, and RYAN, JJ., joined.

Counsel

For Appellant:  Lieutenant W. Scott Stoebner, JAGC, USN
(argued); Lieutenant Stephen Reyes, JAGC, USN.

For Appellee:  Lieutenant Commander Jordan A. Thomas, JAGC, USN
(argued); Commander P. C. LeBlanc, JAGC, USN, and Captain Roger
E. Mattioli, USMC (on brief); Lieutenant Craig A. Poulson, JAGC,
USN.

Military Judge:  Bruce W. MacKenzie

**This opinion is subject to revision before final publication.**

United States v. Othuru, No. 06-0768/NA

Judge ERDMANN delivered the opinion of the court.

Storekeeper Second Class Stanley Othuru was convicted at a general court-martial of making a false official statement and theft of government property as a consequence of his fraudulent collection of basic allowance for housing (BAH) as a married servicemember while he was not legally married.  He was sentenced to sixty days of confinement, reduction to E-3, and a fine of $34,000.00.  If the fine was not paid, the sentence had a provision for contingent confinement of one year.  The convening authority approved the sentence and the United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence.  United States v. Othuru, No. NMCCA 200301631, 2006 CCA LEXIS 139, 2006 WL 1663021 (N-M. Ct. Crim. App. June 13, 2006).  We granted Othuru's petition for grant of review and specified an additional issue.[1]

---

[1] We granted review of the following issue:

> WHETHER THE ADMISSION OF TWO SWORN OUT-OF-COURT STATEMENTS FROM APPELLANT'S MOTHER AND WIFE WHO ACCUSED APPELLANT OF ENTERING INTO A FRAUDULENT MARRIAGE IS HARMLESS BEYOND A REASONABLE DOUBT IN A COURT-MARTIAL WHERE APPELLANT WAS CONVICTED FOR FRAUDULENTLY COLLECTING BASIC ALLOWANCE FOR HOUSING (BAH) BY ENTERING INTO A FRAUDULENT MARRIAGE.

We specified review of the following issue:

> WHETHER APPELLANT WAS DENIED DUE PROCESS OF LAW WHERE THE LOWER COURT DECIDED APPELLANT'S CASE 1,298 DAYS AFTER HIS COURT-MARTIAL.

64 M.J. 440 (C.A.A.F. 2007).

United States v. Othuru, No. 06-0768/NA

Othuru asserts that he was prejudiced by the erroneous admission of two testimonial hearsay statements which alleged that his wife was actually his biological sister.  See Crawford v. Washington, 541 U.S. 36 (2004).  He claims that the Government cannot meet its burden of showing the error was harmless beyond a reasonable doubt.  We conclude that the erroneous admission of the hearsay statements was harmless beyond a reasonable doubt.  There was also a delay of 1,298 days between the end of Othuru's trial and the date upon which the Navy-Marine Corps Court of Criminal Appeals rendered a decision.  This delay raises an issue as to whether there was a denial of Othuru's due process right to speedy post-trial review.  Diaz v. The Judge Advocate General of the Navy, 59 M.J. 34, 37-38 (C.A.A.F. 2003).  We conclude that there was no denial of due process in the processing of Othuru's appeal and therefore affirm the United States Navy-Marine Corps Court of Criminal Appeals.

Harmless Beyond a Reasonable Doubt

Background

Othuru is a native of Nigeria who immigrated to the United States and joined the United States Navy.  He subsequently became a citizen and applied for visas to have his parents and wife come to the United States.  During the processing and review of those visa applications in Nigeria, a suspicion arose

3

that Othuru's alleged wife, Michelle, was actually his biological sister. Under Nigerian law, a marriage to a blood sibling is null and void. The United States Consulate initiated an investigation and the matter was referred to a fraud investigator.

The investigator interviewed Michelle and Othuru's mother. Both women made oral and written statements to the investigator admitting that Michelle was Othuru's biological sister. Othuru's mother stated, "Michelle is our daughter and Stanley is our son and she is our last daughter and we are very sorry of what happened and sending such application." Michelle wrote, "I wish to confess that the petitioner Stanley Oghale Othuru is my older brother and the first child of the family. This marriage is not valid. I am very sorry."

At the trial the military judge admitted the two hearsay statements over defense counsel's objections. The statements were used by the Government to support charges that Othuru made an official false statement and had engaged in BAH fraud by claiming he was legally married to Michelle. The military judge concluded that Othuru's mother and Michelle were unavailable as witnesses and that the statements had particularized guarantees of trustworthiness. The statements were admitted as statements against interest under Military Rule of Evidence (M.R.E.)

4

United States v. Othuru, No. 06-0768/NA

804(b)(3) or as family history under M.R.E. 804(b)(4). Neither Michelle nor Othuru's mother testified at the trial.

On appeal to the Navy-Marine Corps Court of Criminal Appeals, Othuru argued that the admission of the statements violated his Sixth Amendment right to confrontation. That court found the statements were testimonial under Crawford and they were erroneously admitted.[2] Othuru, 2006 CCA LEXIS 139, at *6-*7, 2006 WL 1663021, at *2. The Navy-Marine Corps court concluded, however, that the evidence of guilt was overwhelming and the error was harmless beyond a reasonable doubt. Id. at *10, 2006 WL 1663021, at *4.

Discussion

Othuru argues that the Court of Criminal Appeals erred in determining that admission of the testimonial hearsay was harmless beyond a reasonable doubt. Although some constitutional errors may be so fundamental as to be prejudicial in any event, see Chapman v. California, 386 U.S. 18, 23 n.8 (1967), not all constitutional errors require per se reversal:

---

[2] Crawford was decided after Othuru's court-martial. However, neither party has appealed the ruling of the Navy-Marine Corps Court of Criminal Appeals that the statements were testimonial hearsay and erroneously admitted. Nor has either party argued that the lower court's Crawford ruling is "'clearly erroneous and would work a manifest injustice'" if the parties were bound to it. United States v. Lewis, 63 M.J. 405, 412-13 (C.A.A.F. 2006) (quoting United States v. Doss, 57 M.J. 182, 185 (C.A.A.F. 2002)). Under such circumstances, we will treat the ruling as law of the case and binding on the parties. Id. at 413.

United States v. Othuru, No. 06-0768/NA

"[I]n the context of a particular case, certain constitutional errors, no less than other errors, may have been 'harmless' in terms of their effect on the factfinding process at trial." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) (citation omitted).  The Supreme Court has determined "that the denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case."  Id. at 682 (citing Harrington v. California, 395 U.S. 250, 254 (1969)).  As the error here involves Othuru's Sixth Amendment right to cross-examine the witnesses, we may test this Confrontation Clause error for its effect upon the trial to determine whether the error was harmless beyond a reasonable doubt.  See id. at 684.

The Government bears the burden of establishing that a constitutional error has no causal effect upon the findings. United States v. Simmons, 59 M.J. 485, 489 (C.A.A.F. 2004); United States v. Bins, 43 M.J. 79, 86 (C.A.A.F. 1995).  To meet this burden the Government must demonstrate that there is no reasonable possibility that the presence of the two testimonial statements contributed to the contested findings of guilty. United States v. Kreutzer, 61 M.J. 293, 300 (C.A.A.F. 2005) (citing Gutierrez v. McGinnis, 389 F.3d 300, 307-08 (2d Cir. 2004)).

> To say that an error did not "contribute" to the
> ensuing verdict is not, of course, to say that the

6

> jury was totally unaware of that feature of the trial later held to have been erroneous. . . .
>
> To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.

Yates v. Evatt, 500 U.S. 391, 403 (1991), overruled on other grounds by Estelle v. McGuire, 502 U.S. 62, 72 n.4 (1991). It is in this light then that we will not affirm Othuru's conviction unless we are convinced beyond a reasonable doubt that the "constitutional error was not a factor in obtaining that conviction." Kreutzer, 61 M.J. at 299. The determination of whether an error of constitutional dimension is harmless beyond a reasonable doubt is a question of law that we review de novo. United States v. Cendejas, 62 M.J. 334, 337 (C.A.A.F. 2006); United States v. Hall, 56 M.J. 432, 436 (C.A.A.F. 2002).

Othuru's defense was that Michelle was actually "Michelle Samuel" and that she was the natural daughter of a friend of Othuru's father. Michelle had been selected to become Othuru's wife at a very young age and had been given to his parents who raised her in their family, allegedly a common practice in Nigeria. Othuru argues that the Government has failed to demonstrate that there is no reasonable possibility that the two statements in issue contributed to the findings of guilty. Since the statements came from his mother and Michelle and directly contradicted his only defense, he argues that they were

7

the heart of the Government's case.  He notes that the trial counsel highlighted the statements referring to them "[f]irst and foremost" during closing arguments.  Othuru also notes that the only persons who could rebut the statements were unavailable to testify.

The Government disputes that the statements were the focal point of the prosecution's case and points out that Othuru presented a stipulation of Michelle's expected testimony that directly contradicted her testimonial statement.  The Government also argues that the statements were cumulative of other testimony and evidence which established the fraudulent and invalid nature of Othuru's alleged marriage to Michelle.  Finally, the Government argues that the evidence of guilt was overwhelming even in the absence of the contested statements.

To determine whether the constitutional error was harmless beyond a reasonable doubt we consider the whole record.  Van Arsdall, 475 U.S. at 681.  Reviewing this record we apply the balancing test established by the Supreme Court:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts.  These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-

>       examination otherwise permitted, and, of course, the
>       overall strength of the prosecution's case.

Id. at 684; United States v. Williams, 40 M.J. 216, 218-19

(C.M.A. 1994) (citation omitted).

Our review of the record under the Van Arsdall criteria

convinces us that any error in admitting the statements of

Michelle and Othuru's mother was harmless beyond a reasonable

doubt.[3]  Although trial counsel did reference the testimonial

statements in both his opening statement and his final argument,

the record reflects that the Government's case did not hinge

upon those statements alone.

The Government introduced birth records through the

testimony of Surajudeen Odesanyu, the Custodian of Records in

the Lagos Island local government Birth and Death Registry.  The

birth registry reflected the birth of "Michelle Othuru" on June

30, 1980, born to Othuru's parents, and a certified copy of a

birth certificate for "Michelle Othuru" corresponds to that

registry.  The Government also introduced hospital records

through the testimony of Abimbola Benson, the chief health

record officer at the Lagos University Teaching Hospital.  The

hospital records reflected that Atim Othuru, Othuru's mother,

---

[3] Although the Court of Criminal Appeals cited the Van Arsdall
criteria, it appears to have relied upon only one criteria --
the overall strength of the Government's case -- in finding that
the error was harmless beyond a reasonable doubt.  It is a
better practice to review and balance all of the Van Arsdall

entered the Lagos University Teaching Hospital on June 30, 1980, and gave birth to a female baby on that same day.  Records from two schools successively attended by Michelle reflected that "Michelle Othuru" was enrolled as a student, and witnesses testified that registration at both schools required a supporting birth certificate.  There was no challenge to the validity of these documents.

In contrast, the birth certificate of "Michelle Samuel" submitted in support of Michelle's visa application, was shown to be fraudulent.  That birth certificate is dated April 15, 1997, and certifies that "Michelle Samuel" was born on June 30, 1980, coincidentally the same birth date of Michelle Othuru. Mr. Paul Adigwu, a civil servant in the National Population Commission for Nigeria, examined the exhibit and testified that an actual birth certificate would not be a photocopy as is the "Samuel" certificate.  He also testified that an actual birth certificate would be smaller than the "Samuel" certificate and would have perforations along the left side.  Adigwu further stated that a photocopy of an actual birth certificate would not have an original authentication stamp as does the "Samuel" certificate.

Adigwu noted that he knew the official who purportedly signed the "Samuel" birth certificate and that official had not

criteria in determining whether the error was harmless beyond a

10

performed official duties as a registrar since March 24, 1997, so he could not have signed a birth certificate dated April 15, 1997. Adigwu had compared the "Samuel" birth certificate to the official birth registries in the local government offices and found no entry for the birth of a child named "Michelle Samuel." Based on this review Adigwu testified that the "Samuel" certificate was an invalid birth certificate.

This Government evidence demonstrates that the testimonial hearsay from Michelle and Othuru's mother was not a necessary component of the Government's case. Overall, the prosecution's evidence was strong. The two hearsay statements were cumulative of the documentary evidence reflecting that Michelle was the natural daughter of Othuru's parents. Birth and school records existed to show that Michelle was the daughter of Othuru's parents. Additionally, the absence of any birth records and the apparently fraudulent birth certificate demonstrate there was no "Michelle Samuel." Adigwu's testimony which indicated that there was no such person as "Michelle Samuel" substantially undermined the defense theory that "Michelle Samuel" had come to live with the Othurus at a young age and been treated like a daughter.

While there was no cross-examination of either Michelle or Othuru's mother as both had been deemed unavailable, the defense

reasonable doubt.

did read a stipulation of the expected testimony of Michelle. That stipulation refuted the substance of Michelle's initial statement to the fraud investigator and claimed that she made the statement only after several hours of being interviewed and under pressure.  Therefore only the hearsay statement of Othuru's mother went unchallenged.

Othuru argues that the circumstances of his case are similar to those of United States v. Hall, 58 M.J. 90, 95 (C.A.A.F. 2003), where we concluded that an improperly admitted hearsay statement from Hall's mother was not harmless beyond a reasonable doubt.  In Hall, the appellant had defended against the positive results of a urinalysis by claiming that she drank "Trimate" tea sent to her by her mother.  Id. at 92.  Hall presented expert testimony that a positive result for cocaine could be obtained after drinking "Trimate" tea, a tea made from "decocainized" coca leaves.  Id.  Over defense objection, the military judge permitted the trial counsel to present rebuttal evidence through a law enforcement official that Hall's mother said she had never sent her daughter any tea.  Id.

The military judge then instructed the members that they could only consider the mother's statement for its impeachment value, and not for the truth of the matter stated.  Id. at 92-93.  Before this court, the government conceded that the military judge erred by admitting Hall's mother's statements for

12

United States v. Othuru, No. 06-0768/NA

the purpose of impeaching Hall's testimony.  Id. at 91.
Applying the factors from Van Arsdall, Hall is distinguishable.

The testimony of Hall's mother played a critical role in the prosecution's case, undermining both the factual basis for the innocent ingestion defense and Hall's credibility.  Hall's mother's statement was not cumulative, nor was there any other evidence refuting the mother's statement except Hall's own testimony, the credibility of which had been shattered by her mother's statement.  The case against Hall was based upon a positive urinalysis which we noted was not synonymous with "conviction."  Id. at 94.  In short, the factors balanced in Hall stand in contrast to the overall record and factors present in Othuru's case.

After considering the record as a whole and balancing the Van Arsdall factors, we conclude that the testimonial hearsay statements from Michelle and Othuru's mother did not contribute to Othuru's conviction.  Any error in admitting these two statements was harmless beyond a reasonable doubt.

## Appellate Delay

### Background

Othuru was sentenced on November 23, 2002.  The convening authority took action on June 20, 2003.  The case was docketed before the Navy-Marine Corps court on August 21, 2003.  On January 31, 2005, appellate defense counsel filed a brief on

13

United States v. Othuru, No. 06-0768/NA

behalf of Othuru.  The Government filed its answer on November 18, 2005.  The lower court issued its decision in this case on June 13, 2006 -- 1,298 days after Othuru was sentenced.

Discussion

We specified an issue to consider whether Othuru was denied due process by the 1,298 days that elapsed between his trial and completion of appellate review by the Navy-Marine Corps court. We review whether Othuru was denied due process de novo using the methodology for reviewing issues of post-trial and appellate delay set out in United States v. Moreno, 63 M.J. 129 (C.A.A.F. 2006).  We ask first whether the particular delay is facially unreasonable.  Id. at 136.  If we conclude that the delay is facially unreasonable, we then examine the four factors set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972):  (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice.  See United States v. Young, 64 M.J. 404, 408-09 (C.A.A.F. 2007); Moreno, 63 M.J. at 135-36; United States v. Jones, 61 M.J. 80, 83 (C.A.A.F. 2005); Toohey v. United States, 60 M.J. 100, 102 (C.A.A.F. 2004).

The delay from trial to completion of review at the Court of Criminal Appeals was three years, six months, and twenty days.  In our view, this delay is facially unreasonable and

14

therefore sufficient to trigger an analysis of the four Barker factors. This unreasonable delay would cause the first factor -- length of the delay -- to favor Othuru. As reason for the delay, the Government has pointed to the length and complexity of the record, but acknowledges that there is no reason for the delay at the appellate level in this case. Even assuming that this record may have been more difficult to prepare than others, we conclude that there is no good cause for the lengthy delay herein and that the second factor favors Othuru.

Othuru did not complain about the delay in his case until he filed his initial brief at the Court of Criminal Appeals. Such an assertion is not timely, and the third factor weighs slightly against Othuru. See Moreno, 63 M.J. at 138. Finally, we discern no basis for a finding of prejudice in this case. Othuru has not prevailed on any other substantive issue and no prejudice is manifest on this record. This fourth and final factor weighs against Othuru. Balancing all these factors, we conclude that there is no denial of Othuru's due process right to a timely review and appeal.

## Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.