# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SCHENCK, ZOLPER, and WALBURN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 DEMETRIUS R. CRUDUP**
**United States Army, Appellant**

ARMY 20050112

Headquarters, 7th Infantry Division and Fort Carson
Donna M. Wright, Military Judge
Colonel Kent R. Meyer, Staff Judge Advocate

For Appellant: Captain Seth A. Director, JA (argued); Lieutenant Colonel Kirsten V.C. Brunson, JA; Major Charles A. Kuhfahl, Jr., JA; Captain Seth A. Director, JA (on brief); Colonel John T. Phelps II, JA; Lieutenant Colonel Steven C. Henricks, JA; Major Fansu Ku, JA; Captain Seth A. Director, JA (on supplemental brief).

For Appellee: Captain Phillip M. Staten, JA (argued); Colonel John W. Miller II, JA; Lieutenant Colonel Michele B. Shields, JA; Major Tami L. Dillahunt, JA; Captain Philip M. Staten, JA (on brief).

18 January 2008

---------------------------------
OPINION OF THE COURT
---------------------------------

ZOLPER, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of resisting apprehension and making a false official statement, in violation of Articles 95 and 107, 10 U.S.C. §§ 895 and 907 [hereinafter UCMJ]. Contrary to his pleas, the military judge also found appellant guilty of signing a false official record and assault consummated by battery (three specifications), in violation of Articles 107 and 128, UCMJ. The convening authority approved the adjudged sentence to three years confinement and a bad-conduct discharge and directed appellant receive ninety-six days pretrial confinement credit against the sentence to confinement. This case is before the court for review pursuant to Article 66, UCMJ.

Appellant alleges two assignments of error, one of which merits discussion, but no relief.[1] Appellant asserts the military judge erred in allowing out-of-court statements from Porche Crudup, appellant's wife and victim, regarding appellant's 28 August 2004 assaults on her and their infant son (Specifications 1 and 4, Charge I). Appellant's wife did not testify and defense counsel made a timely objection that admission of her statements failed to meet the requirements set forth in *Crawford v. Washington*, 541 U.S. 36 (2004). We agree with appellant, but find the military judge's erroneous admission of these statements harmless beyond a reasonable doubt.

## FACTS

On 28 August 2004, Military Police (MP) Officer Sergeant (SGT) Vasquez was called to investigate allegations by one of appellant's neighbors, Mrs. F, of a domestic disturbance near appellant's government quarters on Fort Carson, Colorado. Mrs. F testified she heard "a lot of yelling and screaming" and saw Porche Crudup backing away in a defensive posture from appellant.

Upon arriving at the scene, SGT Vasquez saw appellant sitting outside. When SGT Vasquez got out of the MP vehicle, appellant approached SGT Vasquez, and said he had an altercation with his wife and he was the person for whom SGT Vasquez was looking. Sergeant Vasquez, with appellant's consent, entered appellant's quarters. Inside, appellant completed a data sheet and SGT Vasquez's MP partner soon arrived. When SGT Vasquez asked where appellant's wife was, appellant said she was at a neighbor's house down the street.

Approximately fifteen to twenty minutes after arrival at the scene, SGT Vasquez proceeded to the neighbor's house four doors down where he found appellant's wife with a bruised and swollen face. She appeared to have been crying, was clearly upset, and told SGT Vasquez appellant pushed her to the ground while she was holding their infant son, punched and kicked her, and also kicked their son in the face.

---

[1] We disagree with appellant's assertion that his plea of guilty to resisting apprehension is improvident based upon his statement to the military judge that he believed he was already apprehended when he ran from the military police. Even if we agreed with appellant, under the facts of this case, appellant was provident to the closely-related offense of breaking arrest under Article 95, UCMJ. *See United States v. Epps*, 25 M.J. 319, 323 (C.M.A. 1987) (affirming guilty plea to larceny because the providence inquiry established guilt to the closely-related offense of receiving stolen property). *See also United States v. Hubbard*, 28 M.J. 203, 205-06 (C.M.A. 1989); *United States v. Felty*, 12 M.J. 438, 442 (C.M.A. 1982); *United States v. Gonzalez*, 60 M.J. 572 (Army Ct. Crim. App. 2004); *United States v. Green*, 58 M.J. 855 (Army Ct. Crim. App. 2003); *United States v. Rhodes*, 47 M.J. 790, 791 (Army Ct. Crim. App. 1998).

Furthermore, SPC F (appellant's neighbor and Mrs. F's husband) testified that he looked out his window and saw appellant standing over Porche Crudup, who was defensively curled up in a ball. He then saw appellant kick Porche and could see the couple's infant son in her arms. Another neighbor, SGT L, also testified that she saw appellant push Porche to the ground while she held the infant, and then observed appellant kick her and drag her by the hair across the lawn. Sergeant L also saw appellant hit the infant during the altercation. Later that day Mrs. F saw Porche with bruises on her back, and marks on her arms and face. Porche also showed Mrs. F marks on the infant's face. Later in the week, SPC F saw Porche, who still had bruised and puffy eyes.

Appellant later signed a sworn statement admitting to grabbing and pushing his wife onto the floor of their quarters. He also admitted that after she punched him in the head, he went after her — pushing her into the grass and kicking her. Appellant stated his wife was not holding their infant son when he pushed her onto the grass.

The defense, in addition to entering Porche Crudup's previous state convictions for offenses related to fraud, adopted Ms. R, a government witness, as its own. Ms. R, a friend of both appellant and Porche, testified she saw Porche trip and fall while holding the couple's infant son and walking backwards away from appellant. Although she saw appellant attempt to kick Porche, she did not actually see him kick either Porche or the infant. Ms. R testified she took the infant from Porche after the fall because she was afraid that appellant and Porche might get into an altercation. She then went into the house to get her brother. She admitted that she did not know whether appellant hit Porche while she was gone.

## DISCUSSION

We review de novo whether a military judge admitted evidence in violation of the Sixth Amendment. *United States v. Williamson*, 65 M.J. 706, 715 (Army Ct. Crim. App. 2007). If we determine the military judge admitted evidence in violation of the Sixth Amendment, we must also determine whether the error was harmless beyond a reasonable doubt. *United States v. Othuru*, 65 MJ 375 (C.A.A.F. 2007); *United States v. Diamond*, __ MJ __, 2007 CCA LEXIS 566 (Army Ct. Crim. App. 21 Dec. 2007); *Williamson*, 65 M.J. at 715.

In *Crawford v. Washington*, 541 U.S at 53-54, the Supreme Court ruled "the confrontation clause forbids the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." In *Davis v. Washington*, 547 U.S. 813,__ ; 126 S. Ct. 2266, 2274 (2006), the Court clarified that *Crawford* applies only to testimonial hearsay. As the *Davis* Court explained:

> A critical portion of this holding, and the portion central to resolution of the two cases now before us, is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. *See* [*Crawford*, 541 U.S. at 51]. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

*Id*. at___ , 126 S. Ct. at 2273.

In determining whether statements are testimonial we must look to "the circumstances and context in which out-of-court statements are generated, and whether the out-of-court statements were made under circumstances that would lead an objective witness reasonably to believe the statement[s] would be available for use at a later trial by the government." *United States v. Magyari*, 63 M.J. 123, 126 (C.A.A.F. 2006) (citing *Crawford*, 541 U.S. at 52). Moreover, our superior court has instructed that we consider whether each statement: 1) was "in response to a law enforcement or prosecutorial inquiry"; 2) involved "more than a routine and objective cataloging of unambiguous factual matters"; and 3) was made primarily to produce "evidence with an eye toward trial[.]" *United States v. Rankin*, 64 M.J. 348, 352 (C.A.A.F. 2007). As our court recently explained:

> The last of the *Rankin* Court's factors requires military courts to conduct a "contextual analysis" to determine "whether the primary purpose of the document [or statement] was prosecutorial in nature." [*United States v.*] *Foerster*, 65 M.J. [120,] 124. "[O]ur goal is an objective look at the totality of the circumstances surrounding the statement to determine if the statement was made or elicited to preserve past facts for a criminal trial." [*United States v.*] *Gardinier*, 65 M.J. 60, 65 (C.A.A.F. 2007).

*Williamson*, 65 M.J. at 716-17 (second, third, and fifth alterations added).

We find Porche Crudup's statements to SGT Vasquez were testimonial and were admitted in violation of the requirements set forth in *Crawford*. Under facts analogous to appellant's case, the *Davis* Court held that a victim's statement to a police officer after the officer arrived at the house in response to a domestic violence report was testimonial. In addition to being statements to law enforcement personnel, the statements here involved "more than a routine and objective cataloging of unambiguous factual matters." *Rankin*, 64 M.J. at 352. Moreover, the primary purpose of the police questioning was not to enable the officer to assess the situation and to meet the needs of the victim, but was clearly

4

with an "eye toward trial[.]" *Id.* The MPs did not take Porche's statements immediately after arriving on the scene, but first spoke with appellant to obtain his version of events. They did not take Porche's statements until after she had already left the scene and she diffused any immediate danger by taking refuge at a residence separate from appellant.

This, however, does not end our analysis. We must now determine whether this error was harmless beyond a reasonable doubt. The record of trial in this case contains overwhelming evidence supporting appellant's convictions of assault. Upon arriving at the scene in response to a complaint of domestic violence, appellant admitted he had an altercation with his wife and he "was the one [they] were] looking for." Moreover, the extent of Porche's and her son's injuries and the testimony of two of appellant's unbiased neighbors, SGT L and SPC F, describing the assaults in great detail, contradict Ms. R's account that Porche simply tripped and fell. We are convinced, therefore, that the military judge's error was harmless beyond a reasonable doubt.

## CONCLUSION

The findings of guilty and the sentence are affirmed.

Senior Judge SCHENCK and Judge WALBURN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court