UNITED STATES, Appellee

v.

Demetrius R. CRUDUP, Private
U.S. Army, Appellant

No. 08-0392

Crim. App. No. 20050112

United States Court of Appeals for the Armed Forces

Argued October 29, 2008

Decided December 4, 2008

STUCKY, J., delivered the opinion of the Court, in which ERDMANN and RYAN, JJ., joined.  EFFRON, C.J., filed a separate dissenting opinion, in which BAKER, J., joined.

Counsel

For Appellant:  Captain William J. Stephens (argued); Lieutenant Colonel Jonathan Potter and Major Teresa L. Raymond (on brief); Colonel Christopher O'Brien, Lieutenant Colonel Steven C. Henricks, Lieutenant Colonel Mark Tellitocci, and Captain Nathan J. Bankson.

For Appellee:  Captain James L. Ndiaye (argued); Colonel Denise R. Lind and Captain Philip M. Staten (on brief); Colonel John W. Miller II, Major Tami L. Dillahunt, and Major Elizabeth G. Marotta.

Military Judge:  Donna M. Wright

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

We granted review to decide whether the United States Army Court of Criminal Appeals (CCA) erred in holding that the improper admission of an out-of-court, testimonial statement was harmless beyond a reasonable doubt. We affirm.

I. Background

A. Facts

The CCA described the facts of the case as follows:

On 28 August 2004, Military Police (MP) Officer Sergeant (SGT) Vasquez was called to investigate allegations by one of appellant's neighbors, Mrs. F, of a domestic disturbance near appellant's government quarters on Fort Carson, Colorado. Mrs. F testified she heard "a lot of yelling and screaming" and saw [PC, Appellant's wife] backing away in a defensive posture from appellant.

Upon arriving at the scene, SGT Vasquez saw appellant sitting outside. When SGT Vasquez got out of the MP vehicle, appellant approached SGT Vasquez, and said he had an altercation with his wife and he was the person for whom SGT Vasquez was looking. Sergeant Vasquez, with appellant's consent, entered appellant's quarters. Inside, appellant completed a data sheet and SGT Vasquez's MP partner soon arrived. When SGT Vasquez asked where appellant's wife was, appellant said she was at a neighbor's house down the street.

Approximately fifteen to twenty minutes after arrival at the scene, SGT Vasquez proceeded to the neighbor's house four doors down where he found appellant's wife with a bruised and swollen face. She appeared to have been crying, was clearly upset, and told SGT Vasquez appellant pushed her to the ground while she was holding their infant son, punched and kicked her, and also kicked their son in the face.

2

Furthermore, [Specialist (SPC)] F (appellant's neighbor and Mrs. F's husband) testified that he looked out his window and saw appellant standing over [PC], who was defensively curled up in a ball. He then saw appellant kick [PC] and could see the couple's infant son in her arms. Another neighbor, SGT L, also testified that she saw appellant push [PC] to the ground while she held the infant, and then observed appellant kick her and drag her by the hair across the lawn. Sergeant L also saw appellant hit the infant during the altercation. Later that day Mrs. F saw [PC] with bruises on her back, and marks on her arms and face. [PC] also showed Mrs. F marks on the infant's face. Later in the week, SPC F saw [PC], who still had bruised and puffy eyes.

Appellant later signed a sworn statement admitting to grabbing and pushing his wife onto the floor of their quarters. He also admitted that after she punched him in the head, he went after her -- pushing her into the grass and kicking her. Appellant stated his wife was not holding their infant son when he pushed her onto the grass.

The defense, in addition to entering [PC's] previous state convictions for offenses related to fraud, adopted Ms. R, a government witness, as its own. Ms. R, a friend of both appellant and [PC], testified she saw [PC] trip and fall while holding the couple's infant son and walking backwards away from appellant. Although she saw appellant attempt to kick [PC], she did not actually see him kick either [PC] or the infant. Ms. R testified she took the infant from [PC] after the fall because she was afraid that appellant and [PC] might get into an altercation. She then went into the house to get her brother. She admitted that she did not know whether appellant hit [PC] while she was gone.

United States v. Crudup, 65 M.J. 907, 908-09 (A. Ct. Crim. App. 2008).

3

B.  Trial

At trial, PC did not testify.  Instead, over the objection of the defense, the military judge permitted SGT Vasquez to testify that PC told him that Appellant had pushed her to the ground while holding the baby, punched and kicked her, and kicked the baby in the face.

The military judge convicted Appellant, consistent with his pleas, of resisting apprehension and making a false official statement, and contrary to his pleas, of signing a false official record, and three specifications of assault consummated by a battery.  Articles 95, 107, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 895, 907, 928 (2000).  The military judge sentenced him to a bad-conduct discharge and confinement for three years.  The convening authority approved the sentence as adjudged.

C.  The Decision of the Court of Criminal Appeals

The CCA held that the introduction of the out-of-court statements PC made to SGT Vasquez about the batteries violated Appellant's Sixth Amendment confrontation rights.  Crudup, 65 M.J. at 910.  Nevertheless, the CCA concluded that the error was harmless beyond a reasonable doubt and affirmed.  Id.  The CCA's entire analysis of the harmlessness issue is as follows:

> We must now determine whether this error was harmless
> beyond a reasonable doubt.  The record of trial in
> this case contains overwhelming evidence supporting

> appellant's convictions of assault.  Upon arriving at
> the scene in response to a complaint of domestic
> violence, appellant admitted he had an altercation
> with his wife and he "was the one [they were] looking
> for."  Moreover, the extent of [PC's] and her son's
> injuries and the testimony of two of appellant's
> unbiased neighbors, SGT L and SPC F, describing the
> assaults in great detail, contradict Ms. R's account
> that [PC] simply tripped and fell.  We are convinced,
> therefore, that the military judge's error was
> harmless beyond a reasonable doubt.

Id.

## II.  Discussion

Before this Court, Appellant alleges that the introduction of PC's out-of-court statement was not harmless beyond a reasonable doubt with respect to Specification 4 of Charge I. That specification alleged that Appellant unlawfully "shoved [JC], a child under the age of 16 years, to the ground with his hands by unlawfully shoving [PC] to the ground while she was holding [JC] in her arms."

The denial of an accused's Sixth Amendment right to cross-examine a witness may be tested for harmlessness.  See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); United States v. Othuru, 65 M.J. 375, 377 (C.A.A.F. 2007).  We will not set aside Appellant's conviction if we "may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."  Van Arsdall, 475 U.S. at 681.

> The correct inquiry is whether, assuming that the
> damaging potential of the cross-examination were fully
> realized, a reviewing court might nonetheless say that

5

> the error was harmless beyond a reasonable doubt.
> Whether such an error is harmless in a particular case
> depends upon a host of factors, all readily accessible
> to reviewing courts. These factors include the
> importance of the witness' testimony in the
> prosecution's case, whether the testimony was
> cumulative, the presence or absence of evidence
> corroborating or contradicting the testimony of the
> witness on material points, the extent of cross-
> examination otherwise permitted, and, of course, the
> overall strength of the prosecution's case.

Id. at 684. Whether a constitutional error in admitting evidence is harmless beyond a reasonable doubt is a question of law that we review de novo. Arizona v. Fulminante, 499 U.S. 279, 295 (1991); Othuru, 65 M.J. at 378.

In Othuru, we applied the five Van Arsdall factors in determining whether a constitutional error was harmless beyond a reasonable doubt. Othuru, 65 M.J. at 378-80. We noted that the CCA appeared to have relied solely on the overall strength of the government's case in finding the error harmless beyond a reasonable doubt, and cautioned that "[i]t is a better practice to review and balance all of the Van Arsdall criteria," rather than rely on only one of them. Id. at 378 n.3. The CCA in this case cited to Othuru as authority for reviewing the constitutional error for harmlessness. Crudup, 65 M.J. at 909. But the CCA discussed only one of the Van Arsdall factors -- the overall strength of the Government's case -- without mentioning whether it had even considered the other four factors. Id. at 910.

6

Applying the Van Arsdall factors to the facts of this case, we hold that the admission of PC's out-of-court statement was harmless beyond a reasonable doubt.

(1)  The importance of the witness's testimony:  PC's testimony was important in the sense that she was a victim and was the only witness to the entire incident.  But it was "'unimportant in relation to everything else the [military judge] considered on the issue in question, as revealed in the record.'"  Othuru, 65 M.J. at 377 (quoting Yates v. Evatt, 500 U.S. 391, 403 (1991), overruled on other grounds by Estelle v. McGuire, 502 U.S. 62, 72 n.4 (1991)).

(2)  Whether the testimony was cumulative:  It was.

(a)  SPC F testified that he saw Appellant yelling at his wife, who was on the ground, holding her son.  In a previous written statement he had stated that PC was not holding him.

(b)  SGT L testified that she saw Appellant pushing PC, who had the baby in her arms.  Appellant hit PC and the baby causing PC to fall to the ground with the baby in her arms.

(c)  Ms. R testified that she observed part of the incident and thought the baby was in PC's arms when she fell to the ground, but was not sure whether she fell or was pushed.

(d)  In his written statement to the MPs, Appellant admitted that he pushed PC into the grass and kicked her while

she was on the ground.  He denied that PC was holding the baby in her arms at the time.

(3)  Evidence corroborating or contradicting the statement: SGT L saw Appellant strike PC causing her to fall to the ground. Appellant admitted pushing her into the grass and kicking her while she was on the ground.  SGT L, SPC F, and Ms. R agreed that the baby was in PC's arms when she went to the ground, although SPC F had previously stated that PC was not holding the baby when he saw her on the ground.

(4)  The extent of cross-examination permitted:  As PC did not testify at trial, and there was neither an Article 32, UCMJ, 10 U.S.C. § 832 (2000), investigation nor a deposition, Appellant did not have an opportunity to cross-examine her. However, the defense was permitted to impeach PC's credibility with a prior conviction for fraud.  See Military Rule of Evidence (M.R.E.) 806 (permitting impeachment of a hearsay declarant's statement that is entered into evidence).

(5)  Overall strength of the Government's case:  The case was quite strong, including eyewitness testimony, corroborating physical injuries, and Appellant's partial confession.

Based on our review of the Van Arsdall factors, we are convinced that the admission of PC's out-of-court statement into evidence was harmless beyond a reasonable doubt.  It did not "'contribute'" to the verdict as it was unimportant in relation

to the other evidence of record.  Othuru, 65 M.J. at 377

(quoting Yates, 500 U.S. at 403).

## III.  Decision

The decision of the United States Army Court of Criminal

Appeals is affirmed.

United States v. Crudup, No. 08-0392/AR

EFFRON, Chief Judge, with whom BAKER, Judge, joins (dissenting):

Appellant was convicted of a variety of offenses arising out of an incident involving his wife and his infant son. The offenses included assaulting his wife, assaulting his son, resisting apprehension, making a false official statement, and signing a false official record.

At trial, a military law enforcement officer who responded to the scene of an altercation between Appellant and his wife on August 28, 2004, testified about the information he had obtained from Appellant's wife. According to the officer, Appellant's wife said that Appellant had pushed her to the ground while she was holding their infant son. Appellant, in a written statement provided on the day of the incident, acknowledged that he pushed and kicked his wife, but denied that his wife was holding their son during the incident. Four neighbors, all of whom only witnessed fragments of the altercation, testified about portions of the incident.

Appellant and his wife were the only persons present for the entire incident. At trial, the prosecution introduced Appellant's sworn statement into evidence, along with the testimony of the military law enforcement officer recounting the statement attributed to Appellant's wife.

United States v. Crudup, No. 08-0392/AR

On appeal, the United States Army Court of Criminal Appeals held that the military judge erred in permitting the prosecution to offer the military law enforcement officer's version of the statement attributed to Appellant's wife.  The court concluded that the statement attributed to the wife, as recounted in court by the military law enforcement officer, was testimonial. United States v. Crudup, 65 M.J. 907, 910 (A. Ct. Crim. App. 2008).  As such, the court held that the erroneous admission of this statement deprived Appellant of the right of confrontation under the Sixth Amendment to the Constitution.  Id. at 907, 909-10.

The sole issue before our Court is whether the improper admission of the testimonial statement attributed to Appellant's wife was harmless beyond a reasonable doubt.  See United States v. Othuru, 65 M.J. 375, 377 (C.A.A.F. 2007) (observing that the "Government bears the burden of establishing that [the] constitutional error has no causal effect upon the findings"). I agree with the majority that the proper standard for the harmless error analysis is set forth in Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).  For the reasons set forth below, I respectfully dissent from the majority's application of those factors in this case.

The first factor under Van Arsdall involves the importance of the witness's testimony.  The statement attributed to

Appellant's wife differed from the statements of the other witnesses in two vital respects. First, she was the only person, other than Appellant, to observe the incident in its entirety. Second, as an alleged victim in a charge growing out of the same incident, her testimony would likely have carried greater weight with the panel than the testimony of bystanders.

The second factor asks whether the testimony was cumulative. Although other witnesses testified as to portions of the incident, thus replicating the descriptive content of the wife's statement to the military law enforcement officer, the statement attributed to Appellant's wife was qualitatively unique. Only she could offer a description based on witnessing the entire incident, and only she could offer the perspective of being both the mother of the other alleged victim and an alleged victim herself.

The third factor considers other evidence corroborating or contradicting the inadmissible statement. Only Appellant and his wife witnessed the incident from start to finish; none of the other witnesses observed the entire altercation. Mrs. F looked away when she called the military police. Specialist (SPC) F could not see what was happening as he ran downstairs to intervene. Sergeant (SGT) L was asleep when the altercation began. Ms. R turned her back to the scene as she carried off Appellant's son to safety. The altercation also occurred in the

3

early morning hours when it was still relatively dark outside, and the closest bystander-witness was no closer than ten feet from the couple when Appellant's wife fell to the ground.

The testimony presented in the court-martial contains a variety of contradictory statements about the incident. Ms. R stated that Appellant's wife was not pushed, but instead fell while walking backwards away from Appellant. Although SPC F and SGT L testified they saw Appellant's infant son in Appellant's wife's arms during the altercation, SPC F provided a different version of the events in his initial statement to military law enforcement officials. Given the conflicting evidence regarding whether the infant was in his mother's arms as she fell to the ground, the importance of the statements attributed to Appellant's wife cannot be discounted.

The fourth factor involves the extent of cross-examination permitted at trial. Because Appellant's wife did not testify, there was no cross-examination.

The fifth factor concerns the overall strength of the Government's case. I agree with the majority that the prosecution presented significant evidence at trial, even without the statement of Appellant's wife. The evidence presented about the incident, however, consisted of partial observations and sometimes conflicting witness statements. The testimony of Ms. R, the only testifying witness who directly

intervened in the incident as it occurred, contradicted the other witnesses on the critical question of whether Appellant caused his wife's fall.  Appellant did not make any confession, complete or partial, to injuring his son.  On the contrary, Appellant denied that his son was in the wife's arms during the incident.  The Government did not introduce any medical evidence that the child suffered injuries as a result of the incident, nor did the Government introduce any photographic evidence of physical injuries.  In that regard, the Government relied solely on lay witness testimony that the child had red marks and bruising on his face that had not been observed prior to the incident.

Even though a reasonable factfinder could have returned a verdict of guilty based on the evidence presented in this case, see United States v. Turner, 25 M.J. 324, 324 (C.M.A. 1987) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)), that is not the standard at issue in this appeal.  Here, the Government bears the burden of demonstrating that the erroneous admission of the wife's testimony was harmless beyond a reasonable doubt. In light of the Van Arsdall factors, the Government has failed to meet its burden of demonstrating that "there is no reasonable possibility that the presence of the . . . testimonial statements contributed to the contested findings of guilty." Othuru, 65 M.J. at 377.  I would find that the constitutional

error is not harmless beyond a reasonable doubt, vacate the sentence, and remand for a new trial.