UNITED STATES of America

v.

Andrew D. TEARMAN, Lance Corporal
(E–3), U.S. Marine Corps.

NMCCA 201100195.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged: 16 Dec. 2010.

17 Jan. 2012.

For Appellant: Capt Michael Berry, USMC.

For Appellee: LT Ritesh Srivastava, JAGC, USN.

## PUBLISHED OPINION OF THE COURT

WARD, Judge:

A special court-martial composed of officer members convicted the appellant, contrary to his pleas, of a single specification of wrongfully using marijuana in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. The approved sentence included reduction to pay grade E–1 and a bad-conduct discharge.[1]

---

**1.** To the extent that the convening authority's action purports to direct that the punitive dis-charge will be executed after final judgment it is

The appellant assigns one error: that military judge abused his discretion by admitting, over the appellant's objection, testimonial hearsay in violation of his Sixth Amendment right to confrontation. After careful examination of the record of trial, the parties' pleadings, and oral argument, we conclude that testimonial hearsay was erroneously admitted, but that the error was harmless beyond a reasonable doubt. Further, we conclude that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

### Background

The appellant was one of approximately forty-four Marines in his unit randomly selected to participate in a urinalysis. His urine sample was packaged and shipped with the other samples to the Navy Drug Screening Laboratory (NDSL), San Diego, California for testing. Upon arrival, the appellant's urine bottle was assigned a unique laboratory accessing number (LAN), screened, rescreened, and was confirmed for the presence of tetrahydrocannabinol (THC), a marijuana metabolite, above the DoD cutoff level. NDSL subsequently reported the appellant's urine sample as positive.

Several months later, the Government requested from NDSL the empty urine bottle and "drug lab documentation" pertaining to the appellant's LAN. The Government's request stated this material was necessary for "court-martial proceedings." Their request did not identify the appellant by name or list his social security number; rather, it listed the batch number, specimen number, and the corresponding LAN.

Prior to trial, the appellant unsuccessfully moved *in limine* to exclude the entire "Drug Testing Report" (DTR),[2] or in the alternative, "all non-machine generated portions" of the DTR [3] on the basis that the DTR, or at a minimum the handwritten/ stamped portions therein, was testimonial hearsay. At trial,

the Government called Ms. Andrea Kaminski, a forensic chemist and expert witness from the NDSL who testified regarding the NDSL's mission, the accessioning and testing methodology used and the contents of the DTR contained in Prosecution Exhibit 4. Trial defense counsel objected to her testimony and again argued that the DTR contained testimonial hearsay and its admission would violate the appellant's Sixth Amendment right to confrontation. The military judge overruled the defense objection, relying on *United States v. Magyari*, 63 M.J. 123 (C.A.A.F.2006), and finding that the DTR was nontestimonial hearsay under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Ms. Kaminski then testified at length as to the contents of Prosecution Exhibit 4 and concluded that the urine sample associated with the appellant's LAN contained the marijuana metabolite THC above the DoD cutoff limit.

Thus the issue presented is whether the military judge abused his discretion in admitting, over defense objection, Prosecution Exhibit 4, and in doing so violated the appellant's Sixth Amendment right to confrontation. We find that Prosecution Exhibit 4, specifically the DD 2624, contained testimonial hearsay and its admission was error, but the error was harmless beyond a reasonable doubt.

### Discussion

We review a military judge's decision to admit or exclude evidence for an abuse of discretion; however, whether the evidence contains testimonial hearsay is a matter of law we review *de novo*. *United States v. Blazier (Blazier I)*, 68 M.J. 439, 441–42 (C.A.A.F.2010).

With *Crawford*, the admission of hearsay shifted from a reliability analysis under *Ohio v. Roberts*,[4] to an analysis of whether the hearsay is testimonial or nontestimonial. If testimonial, the Sixth Amendment requires otherwise admissible hearsay to satisfy the Confrontation Clause. *Crawford*, 541 U.S. at

---

a legal nullity. *See United States v. Tarniewicz*, 70 M.J. 543 (N.M.Ct.Crim.App.2011).

**2.** Appellate Exhibit XII.

**3.** Appellate Exhibit XIV.

**4.** 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

53–54, 124 S.Ct. 1354. Among those core groups of hearsay defined by *Crawford* as testimonial are "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51–52, 124 S.Ct. 1354 (internal quotation marks and citation omitted).

Following *Crawford,* the Court of Appeals for the Armed Forces (CAAF) decided *Magyari* and held that drug testing reports for urine specimens collected either randomly or through unit sweeps were nontestimonial. *Magyari,* 63 M.J. at 126–27. This was because NDSL employees had no basis to suspect that any particular specimen would test positive or that the testing thereof and the ensuing results would be used at trial. *Id.* at 126. However, CAAF later held that formal memoranda prepared at the request of prosecutors which summarize the contents of the DTR and identify the presence and quantity of an illegal drug are testimonial, because the purpose of that hearsay statement is to establish or prove a fact in a criminal proceeding. *Blazier I,* 68 M.J. at 443; *see also Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 2539–41, 174 L.Ed.2d 314 (2009).

In a recent decision regarding admission of DTRs, CAAF refocused attention on the purpose behind each statement within the DTR, instead of a blanket rule based on the purpose behind the urinalysis collection and testing. *United States v. Sweeney,* 70 M.J. 296, 302 (C.A.A.F.2011) ("[a]sked another way, would it be reasonably foreseeable to an objective person that the purpose of any individual statement in a drug testing report is evidentiary?"). Under the facts of that case, CAAF held that a cover memorandum to the DTR certifying the test results and the specimen custody document certification (DD 2624) were both testimonial, that their admission was error, and that the error was plain or obvious; CAAF then remanded the case for a determination of prejudice.

■ Applying *Sweeney* to the facts of this case, we review the contents of Prosecution Exhibit 4 to determine whether any statements therein are testimonial.[5] Prosecution Exhibit 4 can be distilled into four categories: machine generated annotations; internal chain of custody forms (excluding the DD 2624); review worksheets (one each for the screen, rescreen and confirmation tests); and the DD 2624.[6] As to the first category, we find that those pages containing machine generated annotations are nontestimonial. *United States v. Blazier (Blazier II),* 69 M.J. 218, 224 (C.A.A.F.2010).

■ Next are the internal chains of custody documents. These eight pages, containing a total of thirty-seven individual chain of custody entries, all list a stamped or handwritten name, a signature or initials, a date, and a stamped entry indicating the purpose for the change in custody within the NDSL. We find no attendant formalities to suggest that their primary purpose was as a substitute for testimony at trial. None of these entries certify a test result, or opine as to the accuracy of the testing or adherence to any

---

5. Of note, there is no formal memorandum or cover letter attached to Prosecution Exhibit 4 from an NDSL employee summarizing the contents of the DTR, results of testing, testing level, or accuracy of the tests.

6. Pages 1–2, 5, 7, 12–13, and 17–18 are all chain of custody documents for the appellant's urine bottle, urine sample ("aliquot") or the batch containing the appellant's aliquot. These documents all contain handwritten signatures or initials and date stamps indicating the handling of the bottle, urine aliquot, or batch within the laboratory during the testing process. Pages 3 and 4 are the specimen custody document, DD 2624, which contains numerous stamped entries indicating the chain of custody from collection through receipt at the NDSL. It also contains a certifica-

tion block (block H) where a certifying official, "Tito R. Romero, Jr., Chemist", signs his name certifying that "[he is] a laboratory official, that the laboratory results indicated on this form were correctly determined by proper laboratory procedures, and they are correctly annotated". In block G of the form the notation "THC" appears next to appellant's LAN and his social security number. Pages 6, 11, and 19 are all internal review worksheets for the initial screen, rescreen, and confirmation tests, which list the batch number and the signatures of a technician, quality control reviewer, and initial and final laboratory certifying official. Pages 8–10, 14–16 and 20–34 are mostly machine generated annotations with corresponding time stamps and abbreviations.

testing protocol. Thus, we find none of the chain of custody entries to be "incontrovertibly ... affirmation[s] made for the purpose of establishing or proving some fact in a criminal proceeding." *Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 2716, 180 L.Ed.2d 610 (2011) (citation and internal quotation marks omitted).[7]

■ This leaves us with the internal review worksheets and the DD 2624. The internal review worksheets only contain names, signatures, and dates. None of the "comments" portions of these worksheets contain any notations. Nor do they certify the accuracy of any test results or adherence to any testing protocol. Similar to the chain of custody documents, we find that they lack any formalities to suggest that the signatures and dates are "affirmation[s] made for the purpose of establishing or proving some fact" at trial. *Id.* While formality itself is not dispositive, it is a factor to be considered.[8] The stamped names and/or signatures on these internal review worksheets fall far short of the formalized affidavit-like certificates of the analysts in *Melendez–Diaz* and *Bullcoming,* or the cover memoranda in *Blazier I* and *Sweeney.* In all these latter cases, the certificate or memorandum was prepared at the request of law enforcement, with the explicit purpose of aiding the prosecution in a criminal proceeding. In contrast, these worksheets contain no such indication, as the dates on all three worksheets are either 15 or 16 July 2011, months before the Government submitted its request to the NDSL for the DTR.

■ Turning last to the DD 2624, we find that portions of this document are testimonial. In contrast to the internal review worksheets described above, the DD 2624 is the official Department of Defense specimen custody form used by the NDSL for certifying and reporting urinalysis test results.[9] In addition to indicating the official test result reported by the NDSL ("THC" in block G),[10] block H certified "that the laboratory results ... were correctly determined by proper laboratory procedures, and that they are correctly annotated." These portions of the DD 2624, when taken together, present a formalized, conclusory affirmation, much like the certificates of the analysts in *Melendez–Diaz* and *Bullcoming,* and identical to the certification in *Sweeney.*

Consequently, we find that these two portions of the DD 2624 were testimonial hearsay and their admittance, over defense objection, was in error. We find the remainder of Prosecution Exhibit 4 to be nontestimonial. As the Government laid a proper foundation for a business record under MILITARY RULE OF EVIDENCE 803(6), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), a firmly rooted hearsay exception, we find no abuse of discretion in the admission of the remainder of Prosecution Exhibit 4. *Melendez–Diaz,* 129 S.Ct. at 2539–40; *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354; *Magyari,* 63 M.J. at 128.

**Prejudice**

In assessing prejudice from the erroneous admission of testimonial hearsay, we must review the entire record to determine " 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *United States v. Gardinier,* 67 M.J. 304, 306 (C.A.A.F.2009) (quoting *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). This poses a significant burden, as the Government must show that the testimonial hearsay was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record."

---

7. *See also Melendez–Diaz,* 129 S.Ct. at 2532, n. 1 ("we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case."); *Sweeney,* 70 M.J. at 305 (stamps, signatures and notations on internal chain of custody documents and data review sheets were nontestimonial in context of plain error analysis).

8. *Bullcoming,* 131 S.Ct. at 2717 (holding attendant formalities "more than adequate" to qualify analyst's certificate as testimonial); *Sweeney,* 70 M.J. at 302–03; (holding that analysts making formal certifications on official forms should reasonably understand them to be supporting prosecution at trial).

9. Record at 227, 234–36; PE 4 at 3–4.

10. Record at 235.

*United States v. Othuru,* 65 M.J. 375, 377 (C.A.A.F.2007) (quoting *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), *overruled on other grounds by Estelle v. McGuire,* 502 U.S. 62, 72, n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). The question of whether a constitutional error was harmless beyond a reasonable doubt is a question of law we review *de novo. United States v. Kreutzer,* 61 M.J. 293, 299 (C.A.A.F. 2005).

As we review the record in making this determination, we apply the balancing test established by the Supreme Court in *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) and adopted by CAAF.[11] This includes the importance of the testimonial hearsay in the prosecution's case, whether it was cumulative with other evidence, the presence of corroborating evidence, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Id.* at 684, 106 S.Ct. 1431. Applying these criteria and after a careful review of the entire record, we find that any error in admitting this evidence was harmless beyond a reasonable doubt.

### A. Importance to the Government's Case

Ms. Kaminski testified based on the supporting documentation from the NDSL and offered her own independent assessment based on the underlying test data contained therein. While she briefly referenced the notation "THC" when explaining the information on the DD 2624,[12] she made no reference to this notation or Mr. Romero's certification when explaining the basis for her opinion that the appellant's urine sample con-

tained the metabolite THC. Her testimony to the panel focused on the testing methodology and her independent analysis of the supporting documentation.[13] In short, the administrative notation "THC" and certification by Mr. Romero on the DD 2624 had no bearing on the Government's case. Therefore, we find that this testimonial hearsay was "unimportant in relation to everything else the [members] considered on the issue in question," namely did the appellant's urine contain the metabolite for marijuana. *Othuru,* 65 M.J. at 377 (internal quotation marks and citation omitted).

### B. Cumulativeness

In considering this testimonial hearsay in light of all the evidence introduced at trial, we find these two portions of the DD 2624 to be cumulative with Ms. Kaminski's testimony. Ms. Kaminski made no other reference to this notation "THC," other than one brief reference described above, and she made no reference at all to Mr. Romero's certification in block H. She offered her own conclusions to the panel as to the accuracy, reliability, and ultimate result of the tests performed. At most, these two portions of the DD 2624 were repetitive to her testimony as she placed her own certification on the final result reported.[14]

### C. Corroboration

As a fellow certifying official, Ms. Kaminski arrived at the same conclusion expressed by Mr. Romero in his certification in Block H of the DD 2624. Not only did she independently corroborate his certification, but she was also in charge of the department respon-

---

11. *Sweeney,* 70 M.J. at 306; *Gardinier,* 67 M.J. at 306–07; *United States v. Crudup,* 67 M.J. 92, 94–95 (C.A.A.F.2008); *Othuru,* 65 M.J. at 378.

12. During her testimony, Ms. Kaminski explained the contents of Prosecution Exhibit 4, including pages 3 and 4 which are the aforementioned DD 2524. She explained that block G on page 3 indicated that the LAN associated with the appellant listed a positive result for THC. Record at 235. She made no reference to the certification by Mr. Romero appearing in block H. Nor did the trial counsel reference it during argument.

13. We are mindful that in offering an opinion an expert witness may rely on inadmissible hearsay,

but cannot repeat it. *Blazier II,* 69 M.J at 225. Viewing Ms. Kaminski's testimony on the whole, we find that she presented her own independent conclusions to the panel without relying upon or bolstering them with this testimonial hearsay.

14. Block H lists Mr. Romero as "certifying official." Ms. Kaminski testified that she was a supervisory chemist at the NDSL, certified in every division of the lab, and at the time the tests were performed she oversaw the department responsible for confirmation testing, and is one of only a few laboratory officials able to certify test results. Record at 221–22, 263.

sible for the confirmation test, which is required for the NDSL to report a positive result.[15] She corroborated Mr. Romero's certification in block H of the testing performed with her own imprimatur of authenticity and reliability.

### D. Extent of Confrontation Permitted.

Mr. Romero and the NDSL employee who stamped "THC" on the DD 2624 did not testify so there was no opportunity for cross-examination.

### E. Overall Strength of the Government's Case.

The Government's case consisted of the drug testing register,[16] the drug testing report,[17] the urine bottle,[18] and the testimony of four witnesses. The Government first called the appellant's sergeant major, who interviewed the appellant after the NDSL reported his urine sample positive for the marijuana metabolite THC. The sergeant major testified that the appellant denied using any marijuana, but admitted that others at his wedding were using marijuana.[19] Record at 116. Next, the Government called the urinalysis coordinator and observer, both of whom testified that the appellant's urine sample was properly collected and shipped to the NDSL. Last, Ms. Kaminski explained the documents contained in Prosecution Exhibit 4, testified to the reliability of the tests, the results of the tests performed on the appellant's urine sample, how the NDSL handles urine samples within the laboratory, and how NDSL generates the test results. She could not testify as to the actual handling and testing of the appellant's urine sample as she was not actually present for the testing.[20] She offered her expert opinion that the appellant's urine sample contained the marijua-

na metabolite THC above the DoD established cutoff level.

■ Overall, the Government's case was strong. There were no defects in the collection or chain of custody offered at trial. None of the defense's cross-examination of Ms. Kaminski identified any deficiency or discrepancy associated with the testing of the appellant's urine specimen. The trial counsel effectively argued the appellant's admission to his sergeant major as circumstantial evidence of knowing use. Those factors, plus the permissive inference instruction from the military judge, convince us that there was no reasonable possibility that this testimonial evidence contributed to the verdict.

### Conclusion

Having viewed the entire record and balanced the factors articulated in *Van Arsdall*, we are convinced that the error in admitting the testimonial portions of the DD 2624 was harmless beyond a reasonable doubt. This evidence played no role in the Government's case. Furthermore, it was cumulative with, and ultimately corroborated by, the testimony and independent opinion of the Government's expert witness. On the whole, we find these factors clearly demonstrate that the erroneously admitted evidence did not contribute to the conviction and was "unimportant in relation to everything else the jury considered on the issue". *Othuru*, 65 M.J. at 377 (citation omitted).

Accordingly, the findings and sentence as approved are affirmed.

Senior Judge MAKSYM and Judge BEAL concur.

---

15. Record at 243, 249, 262–63.

16. Prosecution Exhibit 3.

17. Prosecution Exhibit 4.

18. Prosecution Exhibit 5.

19. The appellant's somewhat dubious explanation that he may have been exposed to marijuana when guests at his wedding were using marijuana on the steps of the church is arguably evidence that could have strengthened the Government's case of knowing use, a fact that trial counsel argued to the panel. Record at 350–51.

20. Although she was not present for the screen and rescreen test, Ms. Kaminski testified that she was present for the confirmation test, as the confirmation test was performed in the department of which she is in charge. Record at 263.