Judge RYAN
delivered the opinion of the Court.
Contrary to his pleas, a panel of officer members sitting as a special court-martial convicted Appellant of a single specification of wrongfully using marijuana in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2006). The adjudged and approved sentence provided for a bad-conduct discharge and reduction to E-l. The United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) affirmed the findings and sentence as approved by the convening authority. United States v. Tearman, 70 M.J. 640, 645 (N.M.Ct.Crim.App.2012).
We granted Appellant’s petition for review to determine whether: (1) the admission of the chain-of-custody documents and internal review worksheets violated Appellant’s right of confrontation under the Sixth Amendment; and (2) the admission of the official test result and certification contained in the DD Form 2624 in violation of the Confrontation Clause of the Sixth Amendment was harmless beyond a reasonable doubt.[1] Applying the principles set forth in United States v. Sweeney, 70 M.J. 296 (C.A.A.F.2011), United States v. Blazier (Blazier II), 69 M.J. 218 (C.A.A.F.2010), and United States v. Blazier (Blazier I), 68 M.J. 439 (C.A.A.F.2010), as well as Supreme Court precedent, see Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011); Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we agree with the NMCCA that the chain-of-custody documents and internal review worksheets at issue in this case are nontestimonial. Tearman, 70 M.J. at 642-43.
Further, applying the balancing test set forth in Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), we also agree with the NMCCA that *56 the error in admitting the official test result and certification contained in the DD Form 2624 was harmless beyond a reasonable doubt. Tearman, 70 M.J. at 645.
I. FACTS
On July 7, 2010, Appellant was one of approximately forty-four Marines randomly selected to participate in a urinalysis. His urine sample was packaged and shipped with the other samples to the Navy Drug Screening Laboratory (NDSL), in San Diego, California, for forensic testing. Upon arrival, Appellant’s urine bottle was assigned a unique laboratory accessing number (LAN). NDSL testing detected and confirmed the presence of tetrahydrocannabinol (THC), a marijuana metabolite, in an amount above the Department of Defense (DoD) cutoff level in Appellant’s urine.
On July 16, 2010, the NDSL sent an electronic notification of Appellant’s positive result to the Substance Abuse Coordination Officer (SACO) assigned to Appellant’s squadron, Sergeant O’Neil (Sgt O’Neil). On October 5, 2010, trial counsel requested that the NDSL send the empty urinalysis bottle and “drug lab documentation” pertaining to Appellant’s batch number, specimen number, and unique LAN. Thereafter, a single charge and specification for wrongful use of marijuana, in violation of Article 112a, UCMJ, was referred to a special court-martial, to which Appellant pleaded not guilty.
Prior to trial, the Government submitted an exhibit that included the drug testing report prepared by the NDSL. The drug testing report included the DD Form 2624, other chain-of-custody documents, machine-generated data, and internal review worksheets, documenting the NDSL’s urinalysis process.[2]
The defense moved to exclude the drug testing report in its entirety because the report was “prepared in anticipation for use at trial,” or, in the alternative, to exclude the non-machine-generated portions of the report. The military judge denied the motions, finding that the “entries including ehain[-]of[-]custody notations made by technicians of the [NDSL] in the urinalysis lab report do not constitute testimonial statements within the scope of the confrontation clause” and “are potentially admissible under the business records exception.”[3]
At trial, the Government called Andrea Kaminski, a supervisory forensic chemist and expert witness from the NDSL. The Government offered a portion of Ms. Kaminski’s testimony for the purpose of laying the foundation for admitting the drug testing report as a business record under M.R.E. 803(6). When the Government offered the drug testing report into evidence, the defense asserted a continuing objection on Confrontation Clause grounds. The military judge again overruled the objection, finding that: (1) the drug testing report was admissible in its entirety under United States v. Magyari, 63 M.J. 123 (C.A.A.F.2006), because the testing was performed on “a random sample basis,” *57 under a “non-investigative urinalysis process;” and (2) “trial counsel has laid a proper foundation for [the drug testing report] under [M.R.E. 803(6)].” Thereafter, the drug testing report was admitted into evidence in its entirety.
Ms. Kaminski was trained and certified as an expert witness in the field of forensic science, and testified regarding the NDSL’s mission, its process by which samples are accessioned, its testing methodology, and the contents of the drug testing report. Ms. Kaminski explained that the NDSL’s THC testing process consisted of three independent tests:
The first test is a screening test called immunoassay. If the sample from that first test is presumptive positive, we do a second test. It’s called a resereen immunoassay. And if that is presumptive positive, we do a third test called a confirmation GCMS [(gas chromatography mass spectrometry)] test.
Her expert opinion was that the urine sample associated with Appellant’s LAN contained THC in an amount above the DoD cutoff limit.
Ms. Kaminski was specifically asked about the front side of the DD Form 2624, i.e., the “specimen custody document.” After reviewing the document and the official test result presented in block G, she stated that Appellant’s specimen was positive for THC. Ms. Kaminski then testified about the NDSL’s urinalysis process in detail, focusing on the laboratory’s procedural steps for handling a positive sample and the machine-generated data produced in the course of testing Appellant’s urine sample.[4]
First, Ms. Kaminski described the NDSL’s process for the initial screening test. Then, based on the machine-generated screening results displayed on page eight of the drug testing report, she indicated that Appellant’s sample tested above the DoD cutoff level for THC. Next, Ms. Kaminski testified about the process for the rescreening test. Again, relying on the machine-generated rescreen-ing results contained on pages fourteen and fifteen of the drug testing report, she testified that Appellant’s sample “tested presumptive positive for THC” and indicated that the sample tested above the DoD cutoff level for THC. Finally, Ms. Kaminski described the GCMS confirmation test. Once again, relying on the machine-generated test results on page thirty-one of the drug testing report, she concluded that Appellant’s sample “tested positive for THC” and tested above the DoD cutoff level for THC.
The Government also called Sgt O’Neil, the SACO for Appellant’s squadron, who testified about the process of collecting Appellant’s urine sample, storing the sample, and shipping the sample to the NDSL. Sgt O’Neil identified his signatures on the chain-of-custody portion of the DD Form 2624. Sgt O’Neil testified that he signed the chain-of-eustody document when he released the urine samples to storage, when he removed the samples from storage to prepare for shipping, and when he shipped the samples to the NDSL.
II. NMCCA DECISION
The NMCCA applied Sweeney and unanimously held that, except for blocks G and H on the DD Form 2624, the military judge did not err in admitting the drug testing report as a business record because the report’s remaining statements were either (1) machine-generated, and thus nontestimonial, citing Blazier II, 69 M.J. at 224, or (2) lacked the attendant characteristics and formalities to suggest that they were “a£ftrmation[s] made for the purpose of establishing or proving some fact in a criminal proceeding.” Tearman, 70 M.J. at 642-43 (alteration in original) (quoting Bullcoming, 131 S.Ct. at 2716) (internal quotation marks omitted).
In contrast, the NMCCA held that portions of the DD Form 2624 — i.e., the “official Department of Defense specimen custody form used by the NDSL for certifying and *58 reporting urinalysis test results” — were testimonial. Id. at 643. The NMCCA held that it was error to admit both the NDSL’s official test result — block G on the DD Form 2624 — and its certification “that the laboratory results ... were correctly determined by proper laboratory procedures, and that they are correctly annotated,” — block H on the DD Form 2624 — noting that, taken together, they “present a formalized, conclusory affirmation, much like the certificates of the analysts in Melendez-Diaz and Bullcoming, and identical to the certification in Sweeney.” Id. The NMCCA further held that the admission of this testimonial hearsay over defense objection was harmless beyond a reasonable doubt under Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431, because the erroneously admitted evidence was “cumulative with, and ultimately corroborated by, the testimony and independent opinion of the Government’s expert witness.” Tearman, 70 M.J. at 645.
III. DISCUSSION
Appellant alleges that the NMCCA erred in holding that the chain-of-custody documents and internal review worksheets contained within the drug testing report were nontestimonial, and further argues that the admission of the testimonial statements contained in the DD Form 2624 was not harmless beyond a reasonable doubt. We disagree.[5]
A.
Whether admitted evidence constitutes testimonial hearsay is a question of law reviewed de novo. Blazier I, 68 M.J. at 441-42. “[A] statement is testimonial if ‘made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.’ ” Sweeney, 70 M.J. at 301 (quoting Blazier I, 68 M.J. at 442). “Asked another way, would it be reasonably foreseeable to an objective person that the purpose of any individual statement in a drug testing report is evidentiary?” Id. at 302. To make this determination, we treat “fine distinctions based on the impetus behind the testing and the knowledge of those conducting laboratory tests at different points in time” as relevant considerations, but not as dispositive factors. Blazier I, 68 M.J. at 442; see also Sweeney, 70 M.J. at 302 (“[T]he focus has to be on the purpose of the statements in the drug testing report itself, rather than the initial purpose for the urine being collected and sent to the laboratory for testing.”). Moreover, “the formality” of a statement “is a factor to be considered” when determining whether the statement is testimonial. Sweeney, 70 M.J. at 303 n. 13 (citing Bullcoming, 131 S.Ct. at 2717).
The language used by the Supreme Court to describe whether and why a statement is testimonial is far from fixed. Compare Bullcoming, 131 S.Ct. at 2714 n. 6 (plurality opinion) (“To rank as ‘testimonial,’ a statement must have ‘a primary purpose’ of ‘establishing] or proving] past events potentially relevant to later criminal prosecution.’ ” (alterations in original) (quoting Davis, 547 U.S. at 822, 126 S.Ct. 2266)), with Melendez-Diaz, 557 U.S. at 311, 129 S.Ct. 2527 (“Here ... the affidavits [were] ‘made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial’ *59 ...(quoting Crawford, 541 U.S. at 52, 124 S.Ct. 1354)), and Melendez-Diaz, 557 U.S. at 329, 129 S.Ct. 2527 (Thomas, J., concurring) (“I continue to adhere to my position that ‘the Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.’” (quoting White v. Illinois, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Thomas, J., concurring in part and concurring in the judgment))), and Davis, 547 U.S. at 826-28, 126 S.Ct. 2266 (distinguishing “interrogations solely directed at establishing the facts of a past crime” — which elicit testimonial statements — from interrogations designed to enable law enforcement “to meet an ongoing emergency” — which do not), and Crawford, 541 U.S. at 51, 124 S.Ct. 1354 (offering one formulation of testimonial statements as “ ‘material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially’ ”) (citation omitted), and Crawford, 541 U.S. at 52, 124 S.Ct. 1354 (“Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard.”).[6] However, under any of the various formulations of testimonial statements, neither the chain-of-custody documents nor the internal review worksheets at issue qualify.
As an initial matter, we note that the challenged internal chain-of-custody documents and internal review worksheets[7] are substantially different from the DD Form 2624 certification in Sweeney and the cover memoranda in Sweeney and Blazier I. With regard to the DD Form 2624 certification, we held that the statement was testimonial where it (1) was completed and signed by a laboratory official after all testing was complete, Sweeney, 70 M.J. at 299, (2) indicated that the sample tested positive for cocaine and codeine, id., and (3) certified that the “ ‘laboratory results [on the DD Form 2624] were correctly determined by proper laboratory procedures, and that they are correctly annotated.’ ” Id. at 304. Additionally, we concluded that the cover memoranda certifications were testimonial where they (1) were generated in response to the command’s request, and, like the DD Form 2624 certification, after all testing was complete, see Sweeney, 70 M.J. at 299; Blazier I, 68 M.J. at 442, (2) “identified] the presence of an illegal drug and indieate[d] the quantity present,” Blazier I, 68 M.J. at 443, and (3) “summarize[d] and digested] voluminous data.” Id.
In contrast, here, the process of creating the challenged statements was initiated without any external request, before Appellant was charged, and before all, or in the case of the chain-of-custody documents, any testing was complete. Cf. Sweeney, 70 M.J. at 299, 304. While it is true that the statements were admitted into evidence, whether *60 a statement is testimonial is a determination made ab initio. See Sweeney, 70 M.J. at 301 (citing Bullcoming, 131 S.Ct. at 2717); id. at 302. The fact that a document is ultimately admitted at trial as part of a prosecution exhibit, does not prove a fortiori that it “would ... be reasonably foreseeable to an objective person” that it was created for an evidentiary purpose. Sweeney, 70 M.J. at 302. The technicians’ signatures and annotations on the documents at issue were made under circumstances, which, taken as a whole, establish that they were made for an administrative rather than an evidentiary purpose. Id.
In the first place, the NDSL’s internal chain-of-eustody and internal review documentation process began immediately upon receipt of the urine specimens from the shipping agent and prior to the initial screening test, and were prepared pursuant to internal procedures and not at the request of law enforcement, the command, or prosecution.[8] The entries and notations contained in the documents were made contemporaneously with a change in custody of the sample or a step in the testing process,[9] pursuant to the regular practice of the NDSL and in the regular course of conducting its business. Cf. Blazier I, 68 M.J. at 442 (holding that the cover memorandum was testimonial where it “was prepared not only after the results reporting assistant knew that the specimens had tested positive for illegal substances, but also in response to the prior day’s request by Appellant’s command for such reports ‘for court-martial use’ ”). Thus, when the laboratory technicians signed and annotated the internal chain-of-custody and internal review documents, they did so under circumstances which would lead an objective witness reasonably to believe that they did so to maintain internal control, not to create evidence for use at a later trial. Sweeney, 70 M.J. at 301.
Second, none of the statements at issue summarize or certify “additional substantive information.”[10] Id. at 299; see also United States v. Rankin, 64 M.J. 348, 352 (C.A.A.F.2007) (listing as one relevant factor “in distinguishing between testimonial and nontesti-monial hearsay” whether the statement “involve[d] more than a routine and objective cataloguing of unambiguous factual matters”). Instead, the signatures and annotations in the chain-of-custody documents and internal review worksheets track the progress of the specimen bottle from the command to the NDSL and from person-to-person at the NDSL, and note the progress of the sample through the testing processes.[11] The NDSL’s internal chain-of-eustody documents and internal review worksheets appear to be little more than part and parcel of the internal controls necessary to conduct the NDSL’s business.[12] See Melendez-Diaz, 557 U.S. at 324, 129 S.Ct. 2527 (“Business and *61 public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because — having been created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial.”). Although not every business record is necessarily nontestimonial, see id. at 321, 129 S.Ct. 2527; Sweeney, 70 M.J. at 302, the characteristics that distinguish documents prepared “in the course of a regularly conducted business activity” from those prepared “in anticipation of litigation” under M.R.E. 803(6), see United States v. Foerster, 65 M.J. 120, 126 (C.A.A.F.2007), are also indicative of an administrative purpose rather than an eviden-tiary purpose. See id. at 123-26 (holding that a third-party affidavit was both nontesti-monial and a business record where (1) it was “made at the behest of [the bank],” (2) it “cataloged] objective facts,” and (3) its primary purpose was “preventing fraud”); cf. Palmer v. Hoffman, 318 U.S. 109, 114, 63 S.Ct. 477, 87 L.Ed. 645 (1943) (holding that an accident report provided by an employee of a railroad company did not qualify as a business record because “[its] primary utility [was] in litigating, not in railroading”).
Third, and finally, we observe that the documents at issue lack any indicia of formality or solemnity that, if present, would suggest an evidentiary purpose. See Bullcoming, 131 S.Ct. at 2717 (citing Melendez-Diaz, 557 U.S. at 310-11, 129 S.Ct. 2527). Instead, the “statements” we are asked to deem testimonial are comprised of nothing more than signatures, stamped names, dates, and minimal notations with no certification, swearing, witnessing, or other attestation. Cf. Melendez-Diaz, 557 U.S. at 308, 310-11, 129 S.Ct. 2527 (concluding that the “certificates of analysis” were “quite plainly affidavits” where they reported the drug type, amount, and “[t]he certificates were sworn to before a notary public by analysts at the State Laboratory Institute of the Massachusetts Department of Public Health, as required under Massachusetts law”); id. at 330, 129 S.Ct. 2527 (Thomas, J., concurring) (same). The documents at issue in this case utterly lacked attendant formalities, a characteristic that stands in stark contrast to the formal, affidavit-like certificates and memoranda at issue in Bullcoming, Melendez-Diaz, Sweeney, and Blazier I, and is — under Sweeney — a factor that points to the statements being nontestimonial. 70 M.J. at 303 n. 13 (citing Bullcoming, 131 S.Ct. at 2717; Melendez-Diaz, 557 U.S. at 329, 129 S.Ct. 2527 (Thomas, J., concurring)).
Based on all of the above, we agree with the NMCCA that none of the statements contained in the chain-of-custody documents and the internal review worksheets at issue are testimonial and that the military judge did not abuse his discretion in admitting them as business records under M.R.E. 803(6).[13]
B.
In contrast to the statements made in the chain-of-custody documents and internal review worksheets, blocks G and H of the DD Form 2624 were testimonial statements under Sweeney and, therefore, their admission was error. See 70 M.J. at 304 (“[I]t was plain and obvious error to admit the specimen custody document certification. This certification is a formal, affidavit-like statement of evidence”). Therefore, we review for prejudice.[14] Id. at 306.
*62 Relief for Confrontation Clause errors will be granted only where they are not harmless beyond a reasonable doubt. Id. Whether a constitutional error was harmless beyond a reasonable doubt is a question of law reviewed de novo. See United States v. Savala, 70 M.J. 70, 77 (C.A.A.F.2011). In the context of the erroneous admission of testimonial hearsay, our harmless beyond a reasonable doubt inquiry focuses on whether “ ‘there is a reasonable possibility that the evidence complained of might have contributed to the conviction.’ ” Blazier II, 69 M.J. at 226-27 (quoting Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).
To determine whether a Confrontation Clause error is harmless beyond a reasonable doubt, this Court has adopted the balancing test established in Van Arsdall, considering such factors as: “[1] the importance of the unconfronted testimony in the prosecution’s case, [2] whether that testimony was cumulative, [3] the existence of corroborating evidence, [4] the extent of confrontation permitted, and [5] the strength of the prosecution’s case.” Sweeney, 70 M.J. at 306 (citing Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431). This list of factors is not exhaustive, and “‘[the] determination is made on the basis of the entire record.’” Sweeney, 70 M.J. at 306 (quoting Blazier II, 69 M.J. at 227). To conclude that a Confrontation Clause error was harmless beyond a reasonable doubt, we must be convinced that the testimonial hearsay was unimportant in light of everything else the court members considered on the issue in question. United States v. Gardinier, 67 M.J. 304, 306 (C.A.A.F.2009).
Applying Van Arsdall, the NMCCA determined that four of the five factors supported the Government’s position. Tearman, 70 M.J. at 644 — 45. Because we agree with the NMCCA and find that any impact the testimonial statements may have had on the panel’s findings was de minimis when viewed in light of the entire record of this case, we hold that the error in admitting the testimonial statements — blocks G and H of the DD Form 2624 — was harmless beyond a reasonable doubt.
First, the NMCCA determined that the testimonial hearsay “had no bearing on the Government’s case” and “was ‘unimportant in relation to everything else the [members] considered.’ ” Id. at 644. Ms. Kaminski, the testifying expert, made only one passing reference to the “THC” notation in block G of the DD Form 2624 and no reference at all to Mr. Romero’s certification in block H, “when explaining the basis for her opinion that the appellant’s urine sample contained the metabolite THC.” Id. Thus, the overwhelming majority of Ms. Kaminski’s testimony was squarely within the parameters set by this Court in Blazier I and Blazier II. The record indicates that she reviewed and relied upon the nontestimonial machine-generated data contained in the drug testing report as the basis for her independent conclusion that Appellant’s urinalysis indicated a positive result for THC. Further, she properly relied on machine-generated data as the basis for her conclusion that Appellant’s urinalysis complied with NDSL procedure and was accurate. See Blazier II, 69 M.J. at 224. Thus, the minimal testimonial hearsay admitted was unimportant to the Government’s case when viewed as a whole.
Second, the NMCCA found that the admission of the two testimonial portions of the DD Form 2624 and Ms. Kaminski’s reference to block G were cumulative with the rest of Ms. Kaminski’s testimony. Tearman, 70 M.J. at 644. Ms. Kaminski repeatedly relied on “[her] reading of [the machine] printout[s]” and “[her] expertise,” to reach the conclusion that the specimen tested “above the DoD cutoff.” In addition, she relied on her independent knowledge of the drug testing procedures at the NDSL to “offer[ ] her own conclusions ... as to the accuracy, reliability, and ultimate result of the tests performed.” Id. In this capacity, she testified to matters such as the calibration of the *63 testing machinery, the general reputation of the machinery in the scientific community, and the quality control measures taken during testing.
Third, the testimonial statements in blocks G and H were independently corroborated. Her testimony, which was based on nontesti-monial, machine-generated data, corroborated the “THC” notation in block G. For each of the three tests that were run on the urine sample — the screening test, rescreening test, and GCMS confirmation test — Ms. Kaminski indicated that the specimen tested “above the DoD cutoff” based on the “test result[s] and [her] expertise.” Similarly, as noted by the NMCCA, Ms. Kaminski was “in charge of the department responsible for the confirmation test, which is required for the NDSL to report a positive test.” Tearman, 70 M.J. at 644. With regard to the GCMS confirmation test, Ms. Kaminski testified that: (1) the DoD “sets the cutoff for THC at 15 ng/ml;” (2) “anything 15.0 greater [sic] is considered a positive result;” and (3) the LAN associated with Appellant’s sample “tested positive for THC at 37.17 ng/ml.” Thus, Ms. Kamin-ski corroborated Mr. Romero’s certification in block H with “her own imprimatur of authenticity and reliability.” Id.
Finally, the NMCCA concluded that, “[o]verall, the Government’s case was strong.” Id. at 645. The evidence suggested “no defects in the collection or chain of custody.” Id. And, although Ms. Kaminski could not cure the Confrontation Clause error by serving as a “surrogate witness,” see Blazier II, 69 M.J. at 222, 224, she was subject to extensive cross-examination that failed to reveal any weaknesses in the testing process or her conclusions as to the ultimate result of the tests.[15] Moreover, Appellant’s primary defense of possible passive marijuana exposure was “dubious,” and effectively rebutted by trial counsel during closing argument. Tearman, 70 M.J. at 645 & n. 19.
Here, (1) an expert witness, relying on nontestimonial statements, independently and conclusively established the presence of a drug metabolite in an amount above the DoD cutoff level in Appellant’s urine, (2) the testimonial hearsay was barely touched on during either the expert’s testimony or the Government’s case, and (3) any impact of introducing the testimonial hearsay was both cumulative and de minimis. In this context, there is no “reasonable possibility that the evidence complained of might have contributed to the conviction.” Chapman, 386 U.S. at 23, 87 S.Ct. 824 (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) (internal quotation marks omitted)).
IV. DECISION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

. On March 23, 2012, we granted review of the following issues:
I. THE LOWER COURT HELD THAT THE ADMISSION, OVER APPELLANT’S OBJECTION, OF TWO PIECES OF TESTIMONIAL HEARSAY FOUND WITHIN THE DD FORM 2624 WAS HARMLESS ERROR BEYOND A REASONABLE DOUBT. BUT IT MISAPPLIED THE SWEENEY FACTORS AND DID NOT CONSIDER THE BLAZIER II FACTORS IN ASSESSING PREJUDICE. DID THE LOWER COURT ERR IN HOLDING THAT THE TESTIMONIAL HEARSAY DID NOT CONTRIBUTE TO APPELLANT’S CONVICTION?
II. THE LOWER COURT HELD THAT THE MILITARY JUDGE DID NOT ABUSE HIS DISCRETION IN ADMITTING, OVER APPELLANT’S OBJECTION, THE CHAIN-OF-CUSTODY DOCUMENTS AND INTERNAL REVIEW WORKSHEETS BECAUSE THEY WERE NON-TESTIMONIAL. ARE THESE NON-MACHINE GENERATED DOCUMENTS AND WORKSHEETS TESTIMONIAL?
United States v. Tearman, 71 M.J. 197 (C.A.A.F.2012) (order granting review).

. The drug testing report was made up of the following:
Pages 1-2, 5, 7, 12-13, and 17-18 are all chain of custody documents for the appellant’s urine bottle, urine sample ("aliquot”) or the batch containing the appellant’s aliquot. These documents all contain handwritten signatures or initials and date stamps indicating the handling of the bottle, urine aliquot, or batch within the laboratory during the testing process. Pages 3 and 4 are the specimen custody document, DD 2624, which contains numerous stamped entries indicating the chain of custody from collection through receipt at the NDSL. It also contains a certification block (block H) where a certifying official, "Tito R. Romero, Jr., Chemist”, signs his name certifying that "[he is] a laboratory official, that the laboratory results indicated on this form were correctly determined by proper laboratory procedures, and they are correctly annotated". In block G of the form the notation "THC” appears next to appellant's LAN and his social security number. Pages 6, 11, and 19 are all internal review worksheets for the initial screen, re-screen, and confirmation tests, which list the batch number and the signatures of a technician, quality control reviewer, and initial and final laboratory certifying official. Pages 8-10, 14-16 and 20-34 are mostly machine generated annotations with corresponding time stamps and abbreviations.
Tearman, 70 M.J. at 642 n. 6.

. Military Rule of Evidence (M.R.E.) 803(6) (providing an exception to the rule against hearsay for ”[r]ecords of regularly conducted activity").

. Ms. Kaminski could not specifically testify about the accessioning, initial screening, or the rescreening processes with regard to Appellant's specimen because she was not present for those stages in the testing. She was, however, present for the GCMS confirmation test, which took place in her department.

. Chief Judge Baker's discussion of the testimonial/nontestimonial nature of blocks G and H of the DD Form 2624, in the wake of Williams v. Illinois, - U.S. -, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012) (plurality opinion), see United States v. Tearman, 72 M.J. 54, 68-69 (C.A.A.F.2013) (Baker, C.J., concurring in part and in the result), is irrelevant to the issues before us. Even assuming that Williams either stands for the holding or has the precedential value he asserts, that the DD Form 2624 certifications are testimonial was decided in Sweeney, 70 M.J. at 304 — the continuing vitality of which is not raised by the granted issues. See Tearman, 71 M.J. 197 (order granting review). Furthermore, the Government not only declined to challenge the NMCCA’s holding that it was constitutional error to admit blocks G and H of the DD Form 2624, Tearman, 70 M.J. at 643, but also conceded that the DD Form 2624 is testimonial during oral argument, Audio recording of oral argument at 18:58, Tearman, 71 M.J. 448 (C.A.A.F. Oct. 23, 2012) (No. 12-0313), http://www.armfor. uscourts .gov/newcaaftcalendar^O 12-10. htm# 23' — months after Williams was decided— and instead focúsed its argument on the fact that the error was harmless beyond a reasonable doubt.

. We do not view Williams, 132 S.Ct. 2221, as altering either the Supreme Court’s or this Court’s Confrontation Clause jurisprudence and do not attempt to unravel Williams's various opinions except to note that (1) there was no majority support for any point but the result, see Williams, 132 S.Ct. at 2265 (Kagan, J., with whom Scalia, J., Ginsburg, J., and Sotomayor, J., joined, dissenting) ("Five Justices specifically reject every aspect of [the plurality’s] reasoning and every paragraph of its explication.”); id. at 2255 (Thomas, J., concurring in the judgment) (concluding that the "statements lacked the requisite formality and solemnity to be considered testimonial for purposes of the Confrontation Clause,” but noting that he ”share[s] the dissent’s view of the plurality's flawed analysis”) (internal quotation marks omitted), and (2) the plurality nonetheless understood its conclusion that petitioner’s Sixth Amendment confrontation right was not violated to be "entirely consistent with Bullcoming and Melendez-Diaz," id. at 2240 (plurality opinion).

. The NMCCA described the chain-of-custody documents and internal review worksheets in relevant part:
These eight pages, containing a total of thirty-seven individual chain of custody entries, all list a stamped or handwritten name, a signature or initials, a date, and a stamped entry indicating the purpose for the change in custody within the NDSL .... The internal review worksheets only contain names, signatures, and dates. None of the "comments” portions of these worksheets contain any notations. Nor do they certify the accuracy of any test results or adherence to any testing protocol.
Tearman, 70 M.J. at 642-43.

. This is similarly true of Sgt O'Neil's initial entries in the chain-of-custody portion of the DD Form 2624, which were made (1) following a random, noninvestigative urinalysis, and (2) in the regular course of his duties as the urinalysis unit coordinator.

. For example, the signatures and date stamps on the chain-of-custody portion of the DD Form 2624 for July 7-8, 2010, match Sgt O'Neil’s testimony regarding his handling of the urine specimens on those dates.

. Like the laboratory technicians' signatures and annotations, Sgt O’Neil’s signatures on the specimen chain-of-custody portion of the DD Form 2624 made no certification of "additional substantive information,” beyond a verification of each custodial step for which he was responsible as the SACO assigned to Appellant's unit. Sweeney, 70 M.J. at 299.

. Ms. Kaminski's testimony demonstrates that, unlike the DD Form 2624 certification and cover memoranda, the signatures and annotations on the documents at issue offer very limited substantive information. For example, when asked "[w]hat does the [initial screening review worksheet] tell us?” Ms. Kaminski stated that “[i]t tells you the batch number, the drugs that the sample was tested for and a list of all the technicians who reviewed the data and paperwork for this test."

. Appellant challenges whether the chain-of-custody documents and the internal review worksheets are testimonial; he does not dispute that they are business records under M.R.E. 803(6). This is consistent with defense counsel’s actions at trial — defense counsel objected to the admission of the drug testing report on the ground that it violated the Confrontation Clause, not on the ground that it failed to meet the business records exception to the hearsay rule.

. We reiterate that the fact that the government may introduce, subject to M.R.E. 803(6), nontes-timonial hearsay via the chain-of-custody documents and internal review worksheets contained in drug testing reports does not preclude an accused from seeking to call as witnesses those who handled the urine specimen and performed the screens, rescreens, and confirmation tests to challenge, among other things, the accuracy, validity, and reliability of the test results. Blazier II, 69 M.J. at 225 n. 6 (citing Compulsory Process Clause, U.S. Const, amend. VI; Article 46, UCMJ, 10 U.S.C. § 846 (2006); Rule for Courts-Martial (R.C.M.) 703(a)). Moreover, if Appellant were challenging particular steps in the chain-of-custody or internal review process, as opposed to objecting to the introduction of nontestimonial signatures and notations, the government may choose to establish those challenged steps through live witness testimony, or choose not to at its own peril. See Melendez-Diaz, 557 U.S. at 311 n. 1, 129 S.Ct. 2527.

. We note that here, unlike in Sweeney, 70 M.J. at 304, Appellant objected to the admission of the drug testing report. Therefore, plain error re *62 view is inapplicable. Nevertheless, under Van Arsdall, the erroneous admission of blocks G and H of the DD Form 2624 remains subject to harmless error analysis. 475 U.S. at 684, 106 S.Ct. 1431.

. With respect to the fourth Van Arsdall factor, the NMCCA did note that the declarants of the testimonial portions of the DD Form 2624 did not testify and therefore could not have been cross-examined. Tearman, 70 M.J. at 645. While this factor would weigh against a finding that the admission of the testimonial statements was harmless beyond a reasonable doubt, it is far outweighed by the other four Van Arsdall factors.