CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and BORGERDING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist COREY J. BENNETT**
**United States Army, Appellant**

ARMY 20111107

Headquarters, III Corps and Fort Hood
Gregory A. Gross, Military Judge
Colonel Stuart W. Risch Staff Judge Advocate

For Appellant:  Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain Benjamin W. Hogan, JA (on brief).

28 April 2014

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

KRAUSS, Judge (Part I, Absence Without Leave):

An officer panel sitting as a special court-martial convicted appellant, contrary to his pleas, of two specifications of absence without leave (AWOL) and one specification of wrongful use of marijuana in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 912a (2006) [hereinafter UCMJ].  The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for three months, forfeiture of $978.00 pay per month for three months, and reduction to the grade of E-1.

This case is before the court for review under Article 66, UCMJ.  Appellant assigns two errors and raises matter pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).  Appellant's first assignment of error relative to his AWOL convictions and his *Grostefon* submission relative to his wrongful use of marijuana warrant brief discussion.

### *Absence Without Leave*

Appellant asserts that the evidence is legally and factually insufficient to support his convictions for AWOL because the government failed to prove that he was absent from the unit alleged. We agree in part with appellant and will provide relief in the decretal paragraph.

### Background

Both specifications under Article 86, UCMJ (Specifications 1 and 2 of Charge I) alleged that appellant was absent from "Rear Detachment, 2-7 Cavalry, 4th Brigade Combat Team (Rear) (Provisional), 1st Cavalry Division (Rear) (Provisional), located at Fort Hood, Texas" during two different periods of time. The panel found appellant guilty of Specification 1 of Charge I by exceptions and substitutions, excepting the words and figures "Rear Detachment, 2-7" and substituting the figures "2-7," leaving the specification otherwise untouched. The panel found appellant guilty of specification 2 of Charge I as charged.

The evidence at trial established that appellant was assigned to 2-7 Cavalry, 4th Brigade Combat Team (BCT), 1st Cavalry Division (CD) in Iraq, and that on or about 27 January 2011, upon completion of his authorized Rest and Relaxation leave in the United States, he went AWOL rather than return to Iraq. The evidence further established that on or about 21 March 2011, appellant returned to duty at the Rear Detachment, 2-7 Cavalry on Fort Hood, Texas, but then went AWOL again a few hours later.

The documents admitted relevant to appellant's status during the two periods alleged in Specifications 1 and 2 of Charge I reflect his absences, first, from "D Company, 2-7 Cavalry, 4th BCT, 1st CD, Fort Hood, Texas" from 28 January 2011 until return to "Rear Detachment, 2-7 Cavalry, 4th BCT, 1st CD, Fort Hood, Texas" on 21 March 2011; and second, from "Rear Detachment, 2-7 Cavalry, 4th BCT, 1st CD, Fort Hood, Texas" on 22 March 2011 and remaining so absent until 26 July 2011.

### Law and Analysis

The government concedes its failure to prove appellant's absence from the charged unit in Specification 1 of Charge I, acceding to the contention that 2-7 Cavalry is a completely different unit than 2-7 Cavalry Rear Detachment and therefore concluding a fatal variance exists requiring disapproval of that finding of guilt.

"Under military law, the Government must establish not only that an accused has been absent without leave but also the organization from which he was absent."

*United States v. Bowman*, 21 U.S.C.M.A. 48, 50, 44 C.M.R. 102, 104 (1971). It is not asking too much to expect the government to plead and prove the unit from which an accused is absent without authority. *United States v. Baumgardner*, 42 C.M.R. 829, 832-33 (A.C.M.R. 1970) (Nemrow, J., dissenting). When the evidence establishes a sufficient relationship between the unit alleged and the unit from which appellant was absent, the government generally prevails. *See United States v. Barnes,* 22 C.M.R. 439, 442 (A.B.R. 1956); *see also United States v. Jack*, 7 U.S.C.M.A. 235, 22 C.M.R. 25 (1956). In other words, appellant will prevail when the evidence shows that the unit alleged is completely different than the unit proved.

Appellant's case is a close one in that documentary evidence and testimony established a close and organic relationship between "Rear Detachment, 2-7 Cavalry," located at Fort Hood, and "2-7 Cavalry," then located in Iraq, while also establishing that the rear detachment was administered in large part under another hierarchy of units apparently established for that purpose at Fort Hood. *See Bowman,* 21 U.S.C.M.A. 48, 44 C.M.R. 102; *Barnes*, 22 C.M.R. 439. Because much of the evidence necessary to establish the relationship between the units in question was taken separately by the judge in an Article 39a, UCMJ, session, and never presented to the panel,[1] under the circumstances of this case, we accept the government's concession to set aside the finding of guilty of Specification 1 of Charge I.

The evidence as to Specification 2 of Charge I is sufficient to affirm that finding of guilty. Testimony from the rear detachment commander and acting first sergeant, as well as the documentary evidence, sufficiently establish that appellant was absent from the unit alleged on the dates alleged. Appellant returned to the 2-7 Cavalry Rear Detachment at Fort Hood from his first period of AWOL, was taken under control by responsible members of that unit, and was understood to be a member of and absent from that unit during the relevant period of time. *See United States v. Vidal*, 45 C.M.R. 540, 542-43 (A.C.M.R. 1972); *Bowman*, 21 U.S.C.M.A. at 50, 44 C.M.R. at 104; *Jack*, 7 U.S.C.M.A. 235, 22 C.M.R. 25.

Senior Judge LIND and Judge BORGERDING concur in Part I.

---

[1] Recognizing that while the issue of whether a variance is material and fatal is a question of law, what unit the accused is absent from is a question of fact. *See United States v. Teffeau*, 58 M.J. 62, 66-67 (C.A.A.F. 2003); *Bowman*, 21 U.S.C.M.A. at 50, 44 C.M.R. at 104; *United States v. Murrell*, 50 C.M.R. 793, 795 (A.C.M.R. 1975).

BENNETT — ARMY 20111107

BORGERDING, Judge (Part II, Wrongful Use of Marijuana and Sentence):

*Sixth Amendment Right to Confrontation*

Appellant also alleges in his *Grostefon* matters, *inter alia,* that his Sixth Amendment right to confrontation was violated when the military judge: (1) allowed the testimony of a government expert who did not personally perform any of the tests on appellant's urine; and (2) admitted Prosecution Exhibit (Pros. Ex.) 7, the drug testing laboratory report, which contained testimonial hearsay. We find that the expert's testimony did not violate appellant's right to confrontation because she properly relied on machine-generated data when giving her independent expert opinion. We also find that while the military judge erred by failing to redact portions of Pros. Ex. 6 and 7 that contained testimonial hearsay, such errors were harmless beyond a reasonable doubt.

**Background**

The government's case with regard to appellant's wrongful use of marijuana consisted of the following evidence. First, in a pretrial statement made to his company commander, appellant admitted he had used marijuana approximately one to two weeks prior to 26 July 2011, the date he returned from AWOL status.[2] Second, the government called Dr. CO, the Chief of Certification and Litigation at the Tripler Army Medical Center Forensic Toxicology Drug Testing Laboratory [hereinafter Tripler], who testified that, in her expert opinion, a laboratory document packet, which contained primarily machine-generated data, indicated that a urine sample with the laboratory accession number (LAN) T11H0085019 tested above the DOD cutoff level, and therefore "positive" for tetrahydracannabinol (THC), an active ingredient of marijuana or the cannabis family. Third, Pros. Ex. 6, a "Specimen Custody Document" contained on Department of Defense Form (DD Form) 2624, indicated that this LAN number was matched with appellant's social security number. Finally, the government offered the laboratory document packet itself, absent the cover certification page, as Pros. Ex. 7. The military judge admitted both Pros. Ex. 6 and 7.

**Law and Analysis**

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "Accordingly, no testimonial hearsay may be admitted against a

_____

[2] At trial, appellant objected to the admission of this statement based on a lack of corroboration. Military Rule of Evidence [hereinafter Mil. R. Evid.] 304(g).

4

criminal defendant unless: (1) the witness is unavailable, and (2) the witness was subject to prior cross-examination." *United States v. Blazier* [hereinafter *Blazier II*], 69 M.J. 218, 222 (C.A.A.F. 2010) (citing *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004)).  A statement is testimonial if "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *United States v. Tearman*, 72 M.J. 54, 58 (C.A.A.F. 2013), *cert. denied,* 134 S.Ct. 268 (2013) (quoting *United States v. Sweeney,* 70 M.J. 296, 301 (C.A.A.F.  2011)).[3]  Under both the Confrontation Clause and the rules of evidence, "machine-generated data and printouts are not statements and thus not hearsay—machines are not declarants—and such data is therefore not 'testimonial.'" *Blazier II*, 69 M.J. at 224.  "[A]n expert may, consistent with the Confrontation Clause and the rules of evidence, (1) rely on, repeat, or interpret admissible and nonhearsay machine-generated printouts of machine-generated data, and/or (2) rely on, but not repeat, testimonial hearsay that is otherwise an appropriate basis for an expert opinion, so long as the expert opinion arrived at is the expert's own." *Id.* at 222 (citations omitted).

**Waiver**

As an initial matter, we note there were three separate occasions when defense counsel conceded to the military judge that Dr. CO could testify as to her opinion of whether or not the sample with LAN T11H0085019 tested positive for THC.[4] Defense counsel's only objections with regard to Dr. CO's testimony were based on "foundation" and the fact that "it would be a violation of [the] confrontation [clause]" for Dr. CO to testify that LAN T11H0085019 matched appellant's social security number.  Defense counsel argued Dr. CO could not rely on the data in Pros. Ex. 7 to give her "expert opinion" that the LAN was connected to appellant's social security number.  The military judge agreed with defense counsel and did not allow

---

[3] We recognize that "[t]he language used by the Supreme Court to describe whether and why a statement is testimonial is "far from fixed." S*ee generally Tearman*, 72 M.J. at 58-59 (comparing several definitions of "testimonial" used by the Supreme Court).

[4] The dissent avers that defense counsel "acquiesced only to what would amount to proper opinion testimony sufficient to preserve the matter for appeal." *United States v. Bennett*, ARMY 20111107, slip op. at 13 (Army Ct. Crim. App. 28* Apr. 2014) (mem. op.) (Krauss, J., dissenting).  However, even after hearing Dr. CO's testimony, defense counsel still did not object, which further supports the conclusion that the defense did not find her testimony as to the positive test result objectionable.

\* Corrected

Dr. CO to testify that LAN T11H0085019 corresponded with appellant's social security number.

Defense counsel objected to Pros. Ex. 7 (the laboratory document packet) on two separate occasions, but he never specifically objected to the admission of Bates-stamped page 018. Rather, defense counsel first objected to the inclusion of the cover memorandum in Pros. Ex. 7, which the military judge properly excluded as testimonial hearsay. Second, when Pros. Ex. 7 was offered absent the cover memorandum, defense counsel's only objection was based on relevance, whereupon he argued there was no longer any connection between appellant and the data contained in Pros. Ex. 7. However, defense counsel conceded that if trial counsel was able to establish the connection at a later time, he would withdraw the objection. The military judge allowed Pros. Ex. 7 to be admitted into evidence absent the cover memorandum.

Defense counsel also objected to Pros. Ex. 6 (the "Specimen Custody Document," DD Form 2426) "pursuant to *Sweeny* [sic]" and the "best evidence rule." Specifically, defense counsel argued that the act of assigning the LAN to appellant's social security number was a testimonial statement, requiring the person who assigned the LAN to be produced at trial.[5] The military judge admitted Pros. Ex. 6 into evidence over defense objection only after properly redacting the "THC" result written in Block G of the form. Pros. Ex. 6 showed the connection between the LAN and appellant's social security number (and thus the connection between Pros. Ex. 7 and appellant). Defense counsel never objected to the certification statement in Block H of Pros. Ex. 6.

Despite the lack of specific objections at trial, we decline to apply waiver under the facts of this case. "[T]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." *Sweeney*, 70 M.J. at 303-04 (quoting *United States v. Harcrow*, 66 M.J. 154, 157 (C.A.A.F. 2008)). The record in this case does not support such a finding of intentional relinquishment of a known right because trial defense counsel did make objections to Dr. CO's testimony and Pros. Ex. 6 and 7 based on the Confrontation Clause, albeit not the specific objections of which appellant now complains. Moreover, the entire defense strategy with respect to the Article 112(a),

---

[5] Appellant raises this same argument on appeal in his *Grostefon* matters. We find the military judge properly overruled the defense's objection. The LAN number was assigned prior to any testing. Thus, it was done "under circumstances, which, taken as a whole establish that [it was] made for an administrative rather than an evidentiary purpose." *Tearman*, 72 M.J. at 60 (citing *Sweeney*, 70 M.J. at 302).

UCMJ, charge was to object to any evidence that corroborated appellant's confession, and thus we cannot find that defense counsel's failure to object to Dr. CO's opinion, to the certification in Block H of Pros. Ex. 6, or to Bates-stamped page 018 in Pros. Ex. 7 was a "strategic trial decision." *Id.* at 304. *See generally Harcrow*, 66 M.J. at 157-58. Therefore, we will conduct further analysis under the plain error standard of review. *See Sweeney,* 70 M.J. at 304; *Harcrow*, 66 M.J. at 158.

Plain error occurs when: (1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of appellant. *Sweeney*, 70 M.J. at 304 (citing *Harcrow*, 66 M.J. at 158). "Where, as here, the alleged error is constitutional, the prejudice prong is fulfilled where the Government cannot show that the error was harmless beyond a reasonable doubt. *Id.* (citing *Harcrow*, 66 M.J. at 160).

### Dr. CO's Testimony

Under the principles articulated by our superior court in *Blazier II,* we find Dr. CO's testimony established that her independent expert opinion was based on a review of and reliance upon the non-testimonial, machine-generated data contained in the laboratory document packet. Accordingly, we find no error as to the admission of her testimony.

The military judge recognized Dr. CO as an expert in both pharmacology and forensic toxicology as it pertains to drug testing in the Department of Defense system. Trial defense counsel offered no objection to this recognition. As the Chief of Certification, Dr. CO was in charge of the individuals who reviewed the data coming out of the Tripler laboratory, and as the Chief of Litigation, she was the chief expert witness for the laboratory as well as the official records custodian. Dr. CO testified that she was familiar with the procedures for receipt and processing of samples at Tripler and she was able to explain to the panel the laboratory procedure for intake and processing of these samples.

Dr. CO later testified that Pros. Ex. 7 (the laboratory document packet) "is produced by our laboratory" and "has a hard copy or [sic] the computer generated and any documents that pertain to the testing of a specific specimen." She then explained how most forensic drug laboratories (including Tripler) test for the presence of THC in urine samples. Specifically, she told the panel that the first test conducted on a sample is a screening analysis used to "get rid of all of the negatives," followed by a "confirmation" done by gas chromatography mass spectrometry (GCMS).

Dr. CO then relied upon the non-testimonial, machine-generated data in Pros. Ex. 7 to explain to the panel the specific tests done on the sample with LAN

7

T11H0085019.  Although trial counsel's question prompting this explanation was inartful—"And  based upon the screening and the gas chromatography and mass spectrometry, GCMS results, do you recall what those results for Prosecution exhibit 7?"—we find that Dr. CO's answer was her independent expert opinion of the test results based on the non-testimonial, machine-generated data contained in Pros. Ex. 7.  Instead of simply repeating that the GCMS test showed a positive result for THC, she carefully explained that the sample with LAN T11H0085019 underwent three separate tests, as well as the differences between these tests.  The first test was a screening, which "came up presumptively positive."  She testified that because of the presumptive positive, a second screening test was done which also came out presumptively positive.  She then explained that a third test was done, the GCMS or confirmation test, which showed a positive result.  Finally, Dr. CO testified after reviewing the laboratory document packet, that LAN T11H0085019 had 76 nanograms per milliliter, which was above the DoD cutoff for THC.  We find that all of the information Dr. CO needed to come to these conclusions is found in the non-testimonial, machine-generated data contained in Pros. Ex. 7 and that she properly relied on this data to give her independent expert opinion.  *See* Mil. R. Evid. 702-703; *Blazier II*, 69 M.J. at 224-26.  While not a model of perfection, Dr. CO's testimony meets the requirements of *Blazier II*.  *See generally Tearman*, 72 M.J. 54.

**Prosecution Exhibits 6 and 7**

Although we find no error in Dr. CO's testimony, we do find that the military judge committed plain error in not redacting the certification portion of Pros. Ex. 6 (Block H of the "Specimen Custody Document," DD Form 2624) for similar reasons to those articulated in *Sweeney* and *Tearman*.  *Sweeney*, 70 M.J. at 304-05; *Tearman*, 72 M.J. at 61.  While the military judge correctly redacted the "THC" result notation in Block G, the signed certification in Block H of Pros. Ex. 6 still contained inadmissible testimonial hearsay because it indicated "the laboratory results . . . were correctly determined by proper laboratory procedures, and they are correctly annotated."  The individual who signed the certification did not testify at trial despite providing a "formal, affidavit-like statement of evidence."  *See Sweeney*, 70 M.J. at 304.  We also agree with appellant that the unredacted Bates-stamped page 018 in Pros. Ex. 7 contains inadmissible testimonial hearsay because it plainly states appellant's LAN tested "positive" for THC and this information was certified by two individuals, who also did not testify at trial.  *See Sweeney*, 70 M.J. at 304-05; *Tearman*, 72 M.J. at 61.

However, we find these two erroneous admissions to be harmless beyond a reasonable doubt.  "In the context of the erroneous admission of testimonial hearsay, our harmless beyond a reasonable doubt inquiry focuses on whether 'there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'"  *Id.* (citing *Blazier II*, 69 M.J. at 226-27 (quoting *Chapman v.*

*California*, 386 U.S 18, 23 (1967)). To make this determination, we apply the balancing test found in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). *See Tearman*, 72 M.J. at 62; *Sweeney*, 70 M.J. at 306.

The first *Van Arsdall* factor includes a consideration of "the importance of the unconfronted testimony in the prosecution's case." *Sweeney*, 70 M.J. at 306 (citing *Van Arsdall*, 475 U.S. at 684); *Tearman*, 72 M.J. at 62. We are confident that these erroneously admitted portions of Pros. Ex. 6 and 7 were unimportant in relation to the rest of the evidence considered by the panel. In her testimony, Dr. CO made absolutely no reference to either the certification in Pros. Ex. 6 or to Bates-stamped page 018 of Pros. Ex. 7 in her testimony, as opposed to the expert in *Tearman*, who made a "passing reference" to the "THC" notation in Block G of DD Form 2624. *See Tearman*, 72 M.J. at 62. We find that, similar to the expert testimony in *Tearman*, "the overwhelming majority of [Dr. CO's] testimony was squarely within the parameters" articulated in *Blazier I and Blazier II* in that she relied only on the non-testimonial portions of Pros. Ex. 7 and her own knowledge and experience as a basis for her opinion. *Id.*

The second *Van Arsdall* factor requires consideration of whether the erroneously admitted testimony was cumulative with other evidence presented. *Sweeney*, 70 M.J. at 306 (citing *Van Arsdall*, 475 U.S. at 684); *Tearman*, 72 M.J. at 62-63. We find the information in both the certification in Block H of Pros. Ex. 6 and Bates-stamped page 018 in Pros. Ex. 7 is merely cumulative with Dr. CO's testimony. Dr. CO's independent expert opinion was that the specimen with LAN T11H0085019 was positive for THC. In coming to this conclusion, as we found above, Dr. CO, like the expert in *Tearman*, relied on the nontestimonial, machine-generated data contained in the rest of Pros. Ex. 7. *See Tearman*, 72 M.J. at 62-63. Similarly, Dr. CO testified based on her personal knowledge of the Tripler laboratory procedures about "quality assurance," which she stated were "steps taken by our laboratory to make sure that the wrong results are not reported out." She described in detail the "internal and external quality assurances," which included: "both blind and open quality controls" to ensure "the instrumentation is working properly as well as our personnel are not switching specimens on us;" the fact that multiple tests are conducted on the same sample to ensure accurate results; and inspections of the laboratory conducted three times a year by civilian and military board-certified inspectors and toxicologists.

The third *Van Arsdall* factor explores the existence of corroborating evidence. *Sweeney*, 70 M.J. at 306 (citing *Van Arsdall*, 475 U.S. at 684); *Tearman*, 72 M.J. at 62-63. We find the testimonial portions of Pros. Ex. 6 and 7 were also independently corroborated by Dr. CO's testimony. With respect to Pros. Ex. 6, Dr. CO testified that she was the Chief of Certification and Litigation at Tripler; that she was "in charge of a group of individuals who review the data coming out of the laboratory for technical, scientific, and forensic acceptability;" and that she was also

"the official records custodian of the laboratory." Thus, her testimony corroborated the certification in Block H of Pros. Ex. 6 with "her own imprimatur of authenticity and reliability." *Tearman*, 72 M.J. at 63 (citation omitted). Indeed, she testified there was nothing "amiss" with Pros. Ex. 6, save for the fact that "Ms. [CL] forgot to put the purpose [for her placement of the specimen in the freezer] which is to place it back into storage." Dr. CO also independently corroborated the positive THC notation in Bates-stamped page 018 of Pros. Ex. 7 when she testified the specimen with LAN T11H0085019 tested positive for THC at "76 nanograms per milliliter," which was above the DOD cutoff for THC at "50 nanograms per liter."

The fourth *Van Arsdall* factor requires us to analyze the extent of confrontation permitted. *Sweeney*, 70 M.J. at 306 (citing *Van Arsdall*, 475 U.S. at 684); *Tearman*, 72 M.J. at 63. Since the declarants of the testimonial portions of Pros. Ex. 6 and 7 did not testify at trial, appellant did not have the opportunity to cross-examine them. As in *Tearman*, "[w]hile this factor would weigh against a finding that the admission of the testimonial statements was harmless beyond a reasonable doubt, it is far outweighed by the other four *Van Arsdall* factors." 72 M.J. at 63 n.15. Thus, we find this factor alone does not lead to the conclusion that the testimonial evidence "might have contributed to the conviction." *Id.* at 63 (quoting *Chapman*, 386 U.S. at 23).

Finally, the fifth factor requires us to consider the strength of the government's case. *Sweeney*, 70 M.J. at 306 (citing *Van Arsdall*, 475 U.S. at 684); *Tearman*, 72 M.J. at 63. We find the fifth *Van Arsdall* factor weighs against appellant because the government's case for this specification was strong. Apart from Confrontation Clause objections, the defense identified no weaknesses in either the testing itself or in Dr. CO's testimony. As in *Tearman*, "although [Dr. CO] could not cure the Confrontation Clause error by serving as a 'surrogate witness,'" appellant did have the opportunity to cross-examine her. 72 M.J. at 63 (citing *Blazier II*, 69 M.J. at 222, 224). Appellant declined to do so in this case. In fact, as noted above, defense counsel admitted that Dr. CO could testify as to the positive THC result for LAN T11H0085019 and he did not object to her qualifications as an expert witness. Moreover, appellant confessed to his use of marijuana in a sworn statement given to his company commander. This confession was corroborated by Dr. CO's independently admissible expert testimony.

Overall, an expert witness relied on machine-generated data, as well as her personal knowledge of the drug testing procedures at Tripler, to give her independent opinion that LAN T11H0085019 tested above the DoD cutoff level for THC; the expert did not repeat or highlight any of the wrongfully admitted testimonial statements in Pros. Ex. 6 and 7; and the expert's testimony and appellant's confession rendered the impact of these inadmissible portions of Pros. Ex. 6 and 7 "cumulative and *de minimis*." *Id.* at 63. We therefore find there is "no

reasonable possibility" that this evidence "might have contributed to [appellant's] conviction." *Id.* (quoting *Chapman*, 386 U.S. at 23).

## CONCLUSION

The finding of guilty of Specification 1 of Charge I is set aside and dismissed. The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the error noted, the entire record, and applying the principles of *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and the factors set forth in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we are confident the panel would have adjudged the same sentence absent the finding of guilty of Specification 1 of Charge I.

In evaluating the *Winckelmann* factors, there is no dramatic change in the penalty landscape because appellant's maximum punishment was capped at the jurisdictional limit of a special court-martial: a bad-conduct discharge, confinement for one year, forfeiture of two-thirds pay per month for twelve months, and reduction to the grade of E-1. 73 M.J. at 15-16; UCMJ art. 19; R.C.M. 201(f)(2)(B); R.C.M. 1003(b)(4). Furthermore, appellant remains convicted of another AWOL and wrongful use of marijuana. The gravamen of the offenses has not changed, and under the facts of this case, the evidence supporting the dismissed AWOL specification remains admissible as aggravation directly related to the remaining AWOL. *Winckelmann*, 73 M.J. at 16. Finally, this court reviews the records of a substantial number of courts-martial involving AWOL and drug offenses and we have extensive experience with the level of sentences imposed for such offenses under various circumstances. *Id.*

The sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Senior Judge LIND concurs.

KRAUSS, Judge, dissenting from Part II:

I agree with appellant's assertion that the government failed to adequately corroborate his admission of marijuana use and therefore respectfully dissent from the majority's decision in that respect. Evidence corroborating an admission must be independently admissible. *See United States v. Faciane*, 40 M.J. 399, 403-04 (C.M.A. 1994); *see also United States v. Duvall*, 47 M.J. 189, 190-91 (C.A.A.F. 1997) (accepting the propriety of establishing independent grounds for the admission of corroborating evidence despite the lower court's conclusion otherwise). Here, the only thing the government accomplished, as far as proof beyond appellant's

admission, was admission of inadmissible testimonial hearsay in the form of a laboratory report result reflecting appellant's positive urinalysis for the presence of THC.

The expert called to testify was never asked and never testified to the independent opinion necessary to serve as a basis upon which to corroborate the appellant's admission or otherwise convict the appellant. Instead, the government merely secured the expert's impermissible, or at least inadequate, repetition of otherwise inadmissible testimonial hearsay. *See United States v. Blazier* [hereinafter *Blazier II*], 69 M.J. 218, 225 (C.A.A.F. 2010).

Much like the case in *United States v. Porter*, the expert here never "specifically interpret[ed] or rel[ied] on the machine-generated portions of the [laboratory report] to independently conclude that [appellant's] sample had tested positive for . . . THC." 72 M.J. 335, 338 (C.A.A.F. 2013). Rather, here the government asked the witness whether "based upon the screening and the gas chromatography and mass spectrometry, GCMS results, [she] *recall[ed] what those results for Prosecution Exhibit 7 for identification* [were] [sic]." (emphasis added). The expert then merely reported the results described by the laboratory packet. The government then ultimately asked: "So your expert opinion is that lab packet showed a positive result?" To which the expert witness answered: "Yes. It tested positive three times as mandated by the DoD and *we* were – *we* verified that the chain of custody was intact and *we* called it positive for THC." (emphasis added).[6]

It is apparent from the expert's testimony as a whole that she made reference to the royal "we" as she was not present at any of the testing and was never asked nor ever offered her own independent opinion of what the machine-generated data revealed. The description she provided of her duties is telling: "As a Chief of Certification, I am in charge of a group of individuals who review the data coming out of the laboratory for technical, scientific, and forensic acceptability. *They are the people who actual* [sic] *call the urinalysis negative or positive.* As chief of litigation, I am the chief expert witness for the laboratory as well as the official records custodian of the laboratory." (emphasis added). And, as the majority notes, she was recognized "as an expert in both pharmacology and forensic toxicology *as it pertains to drug testing in the DoD system.*" (emphasis added). In other words, this expert's qualification on the record set up her testimony that she reviewed the lab's

---

[6] The government later asked whether "based on the results – the test results within that laboratory packet then, can you say with certainty that the person provided that sample and just used marijuana within the previous 30 days?" To which the expert ultimately stated: "Yes," and proceeded to repeat the nanogram level reported in the packet and what that means.

work and vouches that it was in accordance with required procedures.  This method of proof is insufficient.  *Blazier II*, 69 M.J. at 225.[7]  The defense lodged sufficient objection to admission of the report, and acquiesced only to what would amount to proper opinion testimony sufficient to preserve the matter for appeal, and therefore, I find the evidence insufficient to affirm Charge II and its specification.  *See Porter*, 72 M.J. 335; *United States v. Tearman*, 72 M.J. 54 (C.A.A.F. 2013); *Blazier II*, 69 M.J. 218; *United States v. Harcrow*, 66 M.J. 154 (C.A.A.F. 2008).[8]

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[7] It may be that this witness could have been qualified to render the required independent opinion.  But she was never asked whether her training, expertise and education equip her to tell us what the machine-generated scientific information, represented essentially by the graphs and numbers in Prosecution Exhibit 7 on pp. 6-8, 13-15, and 20-37, mean.  She also was not asked whether she reviewed that information and had her own opinion about what that information tells us.  In this respect, the judge did not adequately fulfill his role as "gatekeeper."  *See Blazier II*, 69 M.J. at 225 (citations omitted) ("[L]ack of knowledge or unwarranted reliance on the work of others may make an expert opinion inadmissible: the military judge, in his capacity as 'gatekeeper,' must determine whether the opinion is 'based upon sufficient facts or data' and is the product of 'reliable principles and methods' reliably applied to the case.").

[8] Even if defense counsel's objections were deemed insufficiently clear, the admission of the laboratory packet and expert testimony for the purpose of corroboration and conviction constitutes plain error in light of *United States v. Sweeney*, 70 M.J. 296 (C.A.A.F. 2011), decided four months prior to appellant's court-martial, and *Blazier II*, 69 M.J. 218.  *See also Porter*, 72 M.J. 335; *Tearman*, 72 M.J. 54; *Harcrow*, 66 M.J. 154.